**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RALPH TALARICO, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>PUBLIC PARTNERSHIPS, LLC, d/b/a PCG PUBLIC PARTNERSHIPS,<br><br>　　　　　　Defendant. | Case No. 17-2165 |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

**Page**

I.    Introduction .................................................................................................. 1

II.   Statement of Facts ....................................................................................... 2

  A.   Relationship between Consumer Participant and PPL............................ 2

    1.   Rather than Acting as Agent of Consumer, Doing What Consumer
         Asks, PPL Directs the Actions and Monitors the Consumer ..................... 3

    2.   PPL's Training and Orientation of Consumer Participants Provides
         PPL with Indirect Control Over the Entire Employment
         Relationship ................................................................................................. 4

  B.   PPL Shares Power Over Hiring of Workers ........................................... 5

  C.   PPL Exercises Control Over Compensation, Benefits, General Rules, and
       Conditions of Employment ..................................................................... 7

  D.   Day-to-Day Supervision ........................................................................ 8

  E.   PPL Maintains Records and Controls Payroll, Tax Filings, and Insurance........... 9

III.  Argument .................................................................................................... 10

  A.   PPL's Motion Fails as Either a Motion to Dismiss or as a Motion for
       Summary Judgment ................................................................................ 10

    1.   Plaintiff Has Adequately Alleged An Employment Relationship ........... 10

    2.   Genuine Issues of Material Fact Preclude Summary Judgment as to
         Whether PPL Was Plaintiff's Employer ................................................. 11

  B.   Economic Realities Determine the Employer, and Relevant Federal
       Authority Expressly Contemplates Joint Employers in this Context................... 12

  C.   PPL Is a Joint Employer of Plaintiff Under the FLSA ......................... 16

    1.   The FLSA Recognizes an Employee May Have More than One
         Joint Employer ...................................................................................... 16

    2.   The Factors Considered in Evaluating Joint Employer Status.................. 17

    3.   PPL Controlled the Hiring and Firing Process for Workers and
         Requirements that the Workers and Consumers had to Follow................ 19

    4.   PPL Controls Compensation, Benefits, General Rules, and Total
         Hours ...................................................................................................... 21

## TABLE OF CONTENTS

5.     Day-to-Day Supervision of Work ............................................................ 23

6.     PPL Controls Payroll and Other Aspects of Employment Administration and Maintains All Employment Records ........................ 25

D.     PPL Is Plaintiff's Employer Under Pennsylvania Law ......................................... 26

E.     The Pennsylvania Wage Payment Collection Law Applies ................................ 28

IV.    Conclusion ..................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*303 W. 42nd St. Enters., Inc. v. I.R.S.*,
   916 F. Supp. 349 (S.D.N.Y. 1996), *rev'd on other grounds*, 181 F.3d 272 (2d
   Cir. 1999) ..................................................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..........................................................................................11, 12

*Andrews v. Cross Atl. Capital Partners, Inc.*,
   158 A.3d 123 (Pa. Super. Ct. 2017)...............................................................................27

*Antenor v. D & S Farms*,
   88 F.3d 925 (11th Cir. 1996) ..........................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................10

*Barrentine v. Arkansas-Best Freight Sys.*,
   450 U.S. 728 (1981).........................................................................................................12

*Barrientos v. Taylor*,
   917 F. Supp. 375 (E.D.N.C. 1996)..................................................................................21

*Bayada Nurses, Inc. v. Commonwealth, Dep't of Labor & Indus.*,
   958 A.2d 1050 (Pa. Commw. Ct. 2008), *aff'd*, 607 Pa. 527, 8 A.3d 866 (2010) ...................26

*Baystate Alt. Staffing, Inc. v. Herman*,
   163 F.3d 668 (1st Cir. 1998)...................................................................................16, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................10

*Bonnette v. Cal. Health & Welfare Agency*,
   704 F.2d 1465 (9th Cir. 1983) ..........................................................................19, 21, 23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................................11

*Charles v. Burton*,
   169 F.3d 1322 (11th Cir. 1999) ......................................................................................17

*Commonwealth, Dep't of Labor & Indus. v. Stuber*,
   822 A.2d 870 (Pa. Commw. Ct. 2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253
   (2004)..............................................................................................................................26

*Dailey v. Progressive Corp.*,
  No. CIV.A. 03-3797, 2003 WL 22794689 (E.D. Pa. Nov. 12, 2003) ....................................26

*Doe v. Abington Friends Sch.*,
  480 F.3d 252 (3d Cir. 2007)..................................................................................................11

*Dole v. Elliott Travel & Tours, Inc.*,
  942 F.2d 962 (6th Cir. 1991) ...............................................................................................13

*Donovan v. DialAmerica Mktg., Inc.*,
  757 F.2d 1376 (3d Cir. 1985)...............................................................................................17

*In re Enter. Rent-A-Car Wage & Hour Emp't Pracs. Litig.*,
  683 F.3d 462 (3d. Cir. 2012)..........................................................................................13, 17

*Espinoza v. Atlas R.R. Constr., LLC*,
  657 F. App'x 101 (3d Cir. 2016) .........................................................................................26

*Falk v. Brennan*,
  414 U.S. 190 (1973)................................................................................................13, 24, 25

*Garcia v. Nunn*,
  No. 13-6316, 2015 WL 5585451 (E.D. Pa. Sept. 23, 2015).......................................19, 22, 23

*Gary Rapczynski, et al. v. Directv, LLC, & MasTec N. Am., Inc.*,
  No. 3:14-CV-2441, 2016 WL 1071022 (M.D. Pa. Mar. 17, 2016) .......................................19

*Godlewska v. HDA*,
  916 F. Supp. 2d 246 (E.D.N.Y. 2013), *aff'd sub nom. Godlewska v. Human
  Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014)................................................................25

*Goldberg v. Whitaker House Coop., Inc.*,
  366 U.S. 28 (1961)...............................................................................................................17

*Hartman v. Baker*,
  766 A.2d 347 (Pa. Super. Ct. 2000).................................................................................27, 28

*Haybarger v. Lawrence Cty. Adult Prob. & Parole*,
  667 F.3d 408 (3d Cir. 2012).................................................................................................20

*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999).................................................................................................18

*Hively v. Allis-Chalmers Energy, Inc.*,
  No. CIV.A. 13-106, 2013 WL 2557629 (W.D. Pa. June 10, 2013)........................................28

*Hodgson v. Griffin & Brand of McAllen, Inc.*,
  471 F.2d 235 (5th Cir. 1973) ...............................................................................................21

*Int'l Union v. Clark*,
 No. 02-1484 (GK), 2006 WL 2598046 (D.D.C. Sept. 11, 2006) ...........................................15

*Lopez v. Silverman*,
 14 F. Supp. 2d 405 (S.D.N.Y. 1998).......................................................................................17

*Lugo v. Farmers Pride, Inc.*,
 967 A.2d 963 (Pa. Super. Ct. 2009).........................................................................................28

*Markham v. Wolf*,
 147 A.3d 1259 (Pa. Commw. Ct. 2016) ...........................................................................26, 27

*Nationwide Mut. Ins. Co. v. Darden*,
 503 U.S. 318 (1992)..................................................................................................................13

*NLRB v. Browning-Ferris Indus. of Pa., Inc.*,
 691 F.2d 1117 (3d Cir. 1982)...................................................................................................16

*Phillips v. Cty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008).....................................................................................................10

*Rose v. Bartle*,
 871 F.2d 331 (3d Cir. 1989)......................................................................................................10

*Ruiz v. Fernandez*,
 949 F. Supp. 2d 1055 (E.D. Wash. 2013) ................................................................................18

*Rutherford Food Corp. v. McComb*,
 331 U.S. 722 (1947)..................................................................................................................16

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*,
 321 U.S. 590 (1944)..................................................................................................................12

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
 471 U.S. 290 (1985)..................................................................................................................13

*Turner v. Mercy Health Sys.*,
 Nos. 3670 & 5155, 2010 WL 6761223 (Pa. Ct. Com. Pl. Mar. 10, 2010)..............................28

*United States v. Rosenwasser*,
 323 U.S. 360 (1945)..................................................................................................................13

*Walling v. Portland Terminal Co.*,
 330 U.S. 148 (1947)..................................................................................................................13

*Woodard v. FedEx Freight E., Inc.*,
 250 F.R.D. 178 (M.D. Pa. 2008)..............................................................................................27

v

*Yue Yu v. McGrath*,
    597 F. App'x 62 (3d Cir. 2014) ................................................................20, 22, 23

*Zebroski v. Gouak*,
    No. 09-1857, 2009 WL 2950813 (E.D. Pa. Sept. 9, 2009) ................................................27, 28

**STATUTES**

43 Pa. Stat. Ann. §§ 260.3(a), 260.5(a), 333.105(a)(2) ................................................26

**OTHER AUTHORITIES**

29 C.F.R. § 500.20(h) (2017)................................................................17

29 C.F.R. § 541.2 (2017) ................................................................13

29 C.F.R. § 552.109(a) (2015)................................................................1, 16, 26

29 C.F.R. § 791.2 (2017) ................................................................17

29 C.F.R. § 791.2(a) (2017) ................................................................16

29 C.F.R. § 791.2(b)(3) (2017) ................................................................16

Fed. R. Civ. P. 12 ................................................................1, 9, 10

Fed. R. Civ. P. 56................................................................10, 11

U.S. Dep't of Labor, Wage & Hour Div., Division Field Operations Handbook §
    22a04 (rev. 661 Nov. 29, 2010), *available at*
    http://www.dol.gov/whd/FOH/FOH_Ch22.pdf (last visited July 13, 2017) ................................13

U.S. Dep't of Labor, Wage & Hour Div., Administrator's Interpretation No.
    2014-2 (June 19, 2014), *available at*
    https://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2014/FLSAAI2014_
    2.pdf (last visited July 14, 2017) ................................................................ passim

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Application for a 1915(c) Home and Community-Based Services Waiver |
| 2 | Declaration of E. W. |
| 3 | DOL Administrator's Interpretation No. 2014-2 |
| 4 | Declaration of Ralph Talarico |
| 5 | Declaration of Shaneena Jackson |
| 6 | Declaration of Christine Webber |
| 7 | CMCS Informational Bulletin |

## I.  INTRODUCTION

The claims at issue in this case arose due to a change in the regulations governing the Fair Labor Standards Act (FLSA) exemption applicable to "companionship care," that is care provided to ensure the safety of individuals with disabilities and assist them with the activities of daily living.  Before this change, workers providing companionship care were exempt from the FLSA's overtime requirements.  But, effective January 1, 2015, third party entities such as Defendant Public Partnerships, LLC (PPL), can no longer claim the exemption, even if the individual receiving the companionship care services also employed the worker.  In other words, only the recipient of services – the "consumer participant" – can claim the exemption if the recipient and a third party agency jointly employ the worker.[1]  29 C.F.R. § 552.109(a) (2015).  In light of the rule change, PPL's status as a joint employer of Plaintiff Talarico determines whether he and other similarly situated workers are entitled to overtime.

The well-pled allegations in the Complaint are sufficient, under Rule 12(b)(6), to state a claim that PPL is at least a joint employer of Plaintiff and the putative class.  Indeed, PPL never argues otherwise, resting its argument on attempts to show evidence exists that is inconsistent with the allegations.  Given that the test for joint employment depends upon economic realities, not formalities, it is inappropriate and premature to decide whether Plaintiff will ultimately prevail in establishing PPL is his joint employer prior to any discovery.

However, should the Court choose to convert PPL's motion to one for summary judgment and consider evidence outside the Complaint, then the Court should still deny the motion, because the documents submitted by both parties provide ample evidence which, if

---

[1]  We refer to the Medicaid recipient receiving services as the "consumer participant." The person providing services in the consumer participant's home, called "direct care worker" or "DCW" by PPL, is referred to throughout as simply the worker.

1

accepted as true, establishes that PPL jointly employed Plaintiff.  In short, while the motion to

dismiss standard is more appropriate at this stage, under either standard, PPL's motion should be

denied, and this case should proceed.  Whichever rule the Court chooses to proceed under,

Plaintiff requests that oral argument be permitted.

## II.    STATEMENT OF FACTS

### A.    Relationship between Consumer Participant and PPL

The home care services at issue in this case are paid for by Medicaid through the

Participant Directed Services (PDS) program, as part of a Home and Community-Based Services

(HCBS) program.  Pennsylvania has chosen to use an intermediary, PPL, to implement its PDS

program.  Complaint ¶¶ 25-26; Stewart Decl. ¶¶ 3-4, 11 & Ex. A.  As the so-called "fiscal

employer agent" and provider of financial management services, PPL is tasked not only with

"reduc[ing] the employer-related burden for participants," but also with "making sure Medicaid

and Commonwealth funds used to pay for services and supports . . . are managed and dispersed

appropriately as authorized."  Stewart Decl. ¶¶ 3, 11; Ex. 1, HCBS Waiver Application at 15;

Complaint ¶¶ 25-28.[2]  PPL has responsibility for "monitoring service utilization for participants

who are self-directing their services," including providing "monthly reports to common law

employers, service coordinators, and OLTL which display individual service utilization (both

over and underutilization) and spending patterns."  *Id.* at 159.

As set forth below, in many respects the relationship between PPL and consumer

participants mirrors the relationship between a staffing agency and its client.  The client can

---

[2] PPL submitted only portions of the HCBS Waiver Application with the Hale
Declaration (Dkt. 12-1).  Because Plaintiff cites to pages not previously submitted by PPL as
well as pages already on file, Plaintiff submits a complete copy of the HCBS Waiver application
as Ex. 1, so that all citations can be reviewed in a single location.  The complete file was
obtained from http://www.dhs.pa.gov/cs/groups/webcontent/documents/document/c_241592.pdf
(last visited July 13, 2017).

choose which workers it wants on its premises, provide daily supervision, and verify to the staffing agency the workers' hours. There is no question that the staffing agency employs the worker, even in those circumstances where the client also employs him.

      1.   <u>Rather than Acting as Agent of Consumer Participant and, Doing What Consumer Participant Asks, PPL Directs the Actions and Monitors the Consumer Participant</u>

PPL argues that it is merely an agent operating under the direction of the consumer participant. However, the evidence demonstrates that PPL gives direction to the consumer participant and takes many actions in the name of the consumer participant without any direction from the consumer participant that it do so. Complaint ¶ 29; Ex. 2, Declaration of EW ("EW Decl.") ¶¶ 2, 4, 5, 9, 11, 12. Nor does the consumer participant select PPL as his or her agent, pay PPL for its services from his or her own funds, or pay the workers for their work from his or her own funds. The state pays PPL for its work and PPL in turn pays the workers. In short, it is the opposite of the agent/principal relationship that PPL claims.

PPL does not simply take on duties from the consumer participant, its ostensible principal, but instead is empowered by the state to exercise autonomous duties vis-à-vis the employment relationships at issue in this case. Ex. 1 at 24-25, 170, 174 (listing PPL's responsibilities and authority as "fiscal/employer agent"); Complaint ¶¶ 25-28. For example, PPL is directed to "apply for and receive approval from the IRS to act as an agent on behalf of the participant." Ex. 1 at 24-25, 170, 174. Participants are not given any choice in this agency relationship if they want to obtain the Medicaid services. EW Decl. ¶ 4. They cannot select the agent of their choice or operate without an agent. Complaint ¶¶ 25-28; EW Decl. ¶ 4; Stewart Decl. ¶ 11; Ex. 1 at 4, 24-25, 214.[3]

---

      [3] In contrast, hypotheticals 3 and 7 in the Department of Labor's Administrator's Interpretation covering this situation distinguished circumstances where the consumer has free

In addition, PPL has explicit authority to report to the state and the state's designated

service coordinator about the consumer participant, including suggesting that a personal

representative be appointed to make decisions for the consumer participant, because, in PPL's

view, the consumer participant is not able to make his or her own decisions any longer, has not

followed program policy as conveyed to the consumer participant by PPL, is misusing funds, or

is risking his or her health and welfare.  Ex. 1 at 172.  In addition, PPL regularly submits

utilization reports, status reports, and "problem identification reports" to the state, and, if the

consumer participant fails to submit timesheets for two or more consecutive payroll periods, PPL

is required to notify the Service Coordinator as part of its reporting responsibilities.  *Id.* at 26,

159.

        2.     <u>PPL's Training and Orientation of Consumer Participants Provides PPL
with Indirect Control Over the Entire Employment Relationship</u>

PPL controls the relationship between the consumer participant and the worker by

providing training and orientation to each consumer participant on hiring employees, including

completing required documentation, training and supervising employees, establishing schedules,

completing timesheets, firing employees, and handling workplace injuries and workers'

compensation.  Ex. 1 at 24-25, 171.  PPL also works with Service Coordinators to identify

consumer participants in need of additional employer skills training and to provide "ongoing

skills training."  Ex. 1 at 171.  This training effectively leads to indirect day-to-day supervision

of both workers and the consumer participants as PPL monitors this work relationship and

provides regular training and direction to the consumer participant about every aspect of the

---

choice of a fiscal agent, a choice not available here.  Ex. 3, U.S. Dep't of Labor, Wage & Hour
Div., Administrator's Interpretation No. 2014-2 at 15, 17 (June 19, 2014), ("AI2014-2"),
*available at* https://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2014/FLSAAI2014_2.pdf
(last visited July 14, 2017).

employment relationship.  *Id.*

      B.     <u>PPL Shares Power Over Hiring of Workers</u>

PPL shares power over hiring by determining if the consumer participant's preferred

worker is "qualified."  Ex. 1 at 6.  PPL is explicitly empowered to verify that the worker meets

all required qualifications.  Ex. 1 at 5, 65-66; Ex. 4, Declaration of Ralph Talarico ("Talarico

Decl.") ¶¶ 4, 6; Complaint ¶ 26.  As part of verifying qualifications, PPL conducts mandatory

criminal background checks and child abuse clearances on potential employees before they are

hired, and periodically thereafter.  Ex. 1 at 24-25, 64-65; Complaint ¶¶ 26, 42.  PPL also assists

the consumer participant in verifying workers' citizenship or alien status.  Ex. 1 at 24-25;

Complaint ¶ 26; *see also supra* at 2-4.

PPL also maintains a directory of available workers that consumer participants can

choose from.  *See* Dkt 12-2 at 46-48, 90-92 (showing that a worker could be "found using PPL's

MyChoice4Care Provider directory"); https://www.mychoice4care.com/ (last visited July 13,

2017).  This is yet another example of how PPL operates more as a staffing agency and joint

employer than a mere payroll processor.

Workers view PPL as their *de facto* employer.  The primary documents the worker signs

to enter into and requalify for this work have PCG/PPL's logo on every page.  Dkt. 12-2 at 37-

39, 49-51, 72-74, 84-86, 93-95; Dkt. 12-3 at 3-5, 15-17, 58-60, 70-72; Talarico Decl. ¶ 3.  The

agreement contains numerous requirements showing that PPL is involved in the decisionmaking

process, sharing control with the consumer participant.[4]

---

      [4] The agreement also contains boilerplate recitations that PPL is not the employer and
that the consumer participant is the "common law employer."  However, timesheets submitted by
PPL identify the consumer participant as solely the consumer; the line for "employer" is left
blank.  Dkt 12-2 at 62, 111; Dkt. 12-3 at 35, 82.  As discussed below at 13, the FLSA test for
establishing an employment relationship differs from the common law, and does not give weight
to the parties chosen labels.

While PPL suggests that it merely provides the consumer participant with information about the worker's criminal background check, leaving the employment decision up to the individual consumer, the agreement presented to the worker suggests otherwise. It states repeatedly that "employment is contingent" on the results of a criminal background check; that the worker "cannot begin providing services in this program before I have successfully cleared the background checks"; that the worker must "be approved prior to providing any services under this PDS program"; and that the worker "will not be permitted to work or be paid in this program" if PPL determines that he or she is on a state exclusion list. Dkt. 12-2 at 37-39, 49-51, 72-74, 84-86, 93-95; Dkt. 12-3 at 3-5, 15-17, 58-60, 70-72; Talarico Decl. ¶ 3; Complaint ¶¶ 26, 42.

As part of this agreement, PPL also requires the worker to complete required training and meet qualifications specified by OLTL and the individual service plan (ISP); these trainings are mandatory regardless of the consumer participant's preferences. Dkt. 12-2 at 37-39, 49-51, 72-74, 84-86, 93-95; Dkt. 12-3 at 3-5, 15-17, 58-60, 70-72; Talarico Decl. ¶ 3; Complaint ¶¶ 26, 42; *see also* Ex. 1 at 64-65 (worker must complete any necessary training related to the consumer participant's service plan; must comply with Department policies and procedures for provider qualifications); Talarico Decl. ¶¶ 6, 9, 10; Ex. 5, Declaration of Shaneena Jackson ("Jackson Decl.") ¶ 3; Complaint ¶ 27.

PPL also shares control over terminating workers. Much like a client informing a staffing agency that no further workers are needed, or that a particular individual worker is unacceptable, a consumer participant can choose to have a worker stop providing services. Although the work for that particular consumer participant ends, the worker can continue to be employed by PPL and provide services to other consumer participants. Thus, Plaintiff Talarico

stopped providing services to EJ and KS, but that did not affect his ongoing employment by PPL or his provision of services to MJ and EW.  Stewart Decl. ¶¶ 26, 37, 46, 56.

Moreover, PPL has the power to terminate the consumer participant/worker relationship. When PPL determined that Plaintiff had not worked for EJ in several months, it marked Plaintiff in its system as terminated from EJ's care, without any evidence that it consulted EJ or that EJ submitted any paperwork in support of this termination.[5]  Stewart Decl. ¶ 56; Dkt. 12-3 at 86; *cf.* Dkt. 12-3 at 87-92 (forms documenting EJ's request to terminate workers other than Plaintiff). PPL clearly retained the right to terminate workers and did not simply act to carry out the decisions of the consumer participants.  Complaint ¶¶ 28, 31.

C.    PPL Exercises Control Over Compensation, Benefits, General Rules, and
       Conditions of Employment

PPL "is responsible for informing the [consumer] participant of the established rate for that service."  Ex. 1 at 213; Complaint ¶¶ 29, 43; EW Decl. ¶ 6; Talarico Decl. ¶ 8; Jackson Decl. ¶ 6.  While PPL may go through the motions of asking the consumer participant what wage should be paid, it does so only after telling the consumer participant what the established rate is. *Id.*  And after the consumer participant requests a particular rate, PPL reviews and confirms that the requested rate is within the guidelines set by OLTL.  *Id.*  Plaintiff reported that in one instance when his rate was lowered without explanation, he was told by PPL that lowering the rate was required and was not a decision that was left to the consumer participant.  Talarico Decl. ¶ 8.  Another worker reported that a raise was requested by the consumer participant for whom

---

[5] For purposes of this Response, Plaintiff does not dispute that KS, unlike EJ, took steps to terminate him, although the form used was left blank in substantial part (including the section stating whether the termination was voluntary or involuntary and the reasons for the termination).  Dkt. 12-3 at 39.  However, the fact that a consumer participant also has the power to terminate a worker does not undermine PPL's contemporaneous power to do so or PPL's role as a joint employer with the consumer.  *See infra* at 16-17, 19-21.

she provided services, but PPL denied the raise.  Jackson Decl. ¶ 6.  In short, PPL exercises substantial control over setting pay rates, especially in light of its mandate to report mismanagement of funds to OLTL.  *See supra* at 4.

PPL's involvement extends beyond the crucial setting of pay rates.  PPL, in its initial and requalifying agreements with the workers, informs workers that they must agree to comply with various requirements that are not the choice of the consumer participant.  This includes maintaining documents, completing paperwork, and adhering to the rules required by the PDS and OLTL program and reporting certain events or suspected abuse to the Service Coordinator "as required by OLTL."  Dkt. 12-2 at 37-39, 49-51, 72-74, 84-86, 93-95; Dkt. 12-3 at 3-5, 15-17, 58-60, 70-72; Talarico Decl. ¶¶ 7, 9-10; Complaint ¶ 27.  It is PPL, not the consumer participant, that establishes and enforces these employment requirements.

### D.    Day-to-Day Supervision

PPL informs Plaintiff (and other workers) of the maximum number of hours each is permitted to work for each consumer participant.  Complaint ¶ 33; Talarico Decl. ¶ 8; EW Decl. ¶ 7.  PPL further tracks time worked to ensure compliance with these time limits.  Complaint ¶ 34; Talarico Decl. ¶ 12; EW Decl. ¶ 8; Jackson Decl. ¶ 7.

PPL directs the worker to agree to provide the services in the approved plan, rather than entrusting the duties to the free discretion of the consumer participant.  Dkt. 12-2 at 37, 49, 72, 84, 93; Dkt. 12-3 at 3, 15, 58, 70 (worker agrees "to provide the supports as identified and authorized in the Individual Service (ISP)"); Jackson Decl. ¶ 5.  The consumer participants have the opportunity to direct workers with respect to their day-to-day tasks, much as an individual receiving workers from a staffing agency is able to do.  This discretion, however, is cabined by PPL's instructions to workers to follow the ISPs and other similar workplace requirements.

E.      <u>PPL Maintains Records and Controls Payroll, Tax Filings, and Insurance</u>

PPL does not dispute that workers submit timesheets to PPL for processing and are paid directly by PPL.  Complaint ¶¶ 34-36, 46-47; Talarico Decl. ¶¶ 12, 14; EW Decl. ¶ 8; Jackson Decl. ¶ 9.  In doing so, PPL does not merely ministerially pay workers for whatever time is included on the timesheets.  Instead, "[t]imesheets are validated [by PPL] against the participant's eligibility and service authorization information imported to [PPL's] web portal." Ex. 1 at 214.

PPL is also responsible for every aspect of creating and maintaining employment records, obtaining workers' compensation insurance, withholding taxes and making required tax filings, preparing and issuing payroll checks to the workers, processing any judgments or garnishments of workers' wages as required by law, and issuing W-2 forms to the workers.  Ex. 1 at 24-25; Talarico Decl. ¶ 14; Jackson Decl. ¶ 9; Complaint ¶¶ 34-36, 46-47.  The payroll checks workers received show PPL's logo on the check face.  Dkt. 12-2 at 63, 112; Dkt. 12-3 at 36, 83.  The W-2 forms issued list the employer as "Public Partnerships for PA HH ER Agent for (redacted)."  Dkt 12-2 at 64-68, 113-115; Dkt. 12-3 at 37-38, 84-85.

Whenever Plaintiff or other workers had issues with their pay, they had to address these issues with PPL; the consumer participants could do nothing to remediate the issues other than refer the workers to PPL.  Talarico Decl. ¶ 13; EW Decl. ¶ 9; Jackson Decl. ¶ 8.  Further, it was PPL, not the consumer participant, that decided to pay overtime, including some back pay, to Plaintiff Talarico.  Talarico Decl. ¶ 15; EW Decl. ¶ 11.  Finally, it was PPL that required workers to complete applications for possible tax exemptions, which it mandated workers to take if it determined they were eligible.  Dkt 12-3 at 6-8.  In none of these matters did PPL seek or receive any direction from the consumer participant, a fact that demonstrates PPL's control over these areas.  EW Decl. ¶¶ 4, 5, 10, 12.

## III.    ARGUMENT

### A.    PPL's Motion Fails as Either a Motion to Dismiss or as a Motion for Summary Judgment[6]

#### 1.    Plaintiff Has Adequately Alleged An Employment Relationship to Preclude Dismissal of his Claims

Under Rule 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  All reasonable inferences must be drawn in favor of the non-moving party.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

PPL never argues that it could satisfy the standards governing Rule 12(b)(6) motions to dismiss, implicitly conceding that Plaintiff's allegations, if accepted as true, suffice to state a claim that PPL is Plaintiff's employer.  As set forth in greater detail below, Plaintiff has alleged sufficient facts to state a claim for PPL's liability as a joint employer of the workers.  Plaintiff has alleged that PPL exercises power with respect to hiring and firing, Complaint ¶¶ 26, 28, 31, 42; setting compensation and overall terms and conditions of employment, Complaint ¶¶ 27, 29, 43; capping the hours worked and tracking time worked each week, Complaint ¶¶ 33-34; and payroll, tax filings, and other administrative aspects of employment, Complaint ¶¶ 34-36, 46-47. The fact that the consumer participant may exercise some concurrent authority in some of these areas is irrelevant, since an employee may have two or more joint employers simultaneously.

---

[6] Based on the procedural posture of this case, the lack of discovery, and the fact that PPL did not file a stipulation of undisputed facts (per the Court's practice guidelines) with its motion, it remains unclear whether this motion should be construed as a motion to dismiss or for summary judgment.

2.    <u>Genuine Issues of Material Fact Preclude Summary Judgment as to Whether PPL Was Plaintiff's Employer</u>

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  However, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  The district court must provide notice of its intent to convert the filing to a motion for summary judgment and allow the submission of materials pursuant to Federal Rule of Civil Procedure 56.  *See, e.g.*, *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989).

There is no reason to permit such an early motion for summary judgment, prior to any discovery, on an issue that is as fact specific as the "economic reality" of whether PPL employs the workers.  Plaintiff therefore requests that the Court deny PPL's motion and allow the parties to move forward with full discovery.

However, if this Court elects to consider the evidence submitted by PPL and converts the filing to a motion for summary judgment, Plaintiff still prevails.  Even at this early stage – with no formal discovery and an extremely thin factual record – the available evidence demonstrates genuine issues of material fact as to whether PPL is an "employer" under the FLSA and Pennsylvania state law.[7]

---

[7] In the alternative, should the Court believe a more complete factual record is needed to confirm the disputes of fact Plaintiff has argued, Plaintiff requests the opportunity to obtain discovery on the economic realities of PPL's status as his employer, as detailed in the attached Declaration of Christine E. Webber ("Webber Decl."), Ex. 6.  Recognizing that discovery is critical to responding to a motion for summary judgment, Rule 56(d) provides that if the opposing party shows that it cannot present facts essential to oppose the motion, the court may defer consideration of the motion – or deny it entirely – in order to allow sufficient time for discovery to be obtained. Fed. R. Civ. P. 56(d); *see* also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("it is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery" (internal citations and quotation marks omitted)).  While Plaintiffs have presented substantial facts, clearly more

Under Rule 56, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [the] burden of proof." *Doe*, 480 F.3d at 256 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986)). The non-moving party's evidence is to be believed and all reasonable inferences drawn in his favor. *Anderson*, 477 U.S. at 255.

As set forth in detail below, the record evidence – documents submitted by PPL, more complete copies of those governing documents, and declarations from Plaintiff and other witnesses – demonstrates several key factual disputes. If those disputes are resolved in Plaintiff's favor, then an employment relationship is established between PPL and the workers.

> B.    <u>Economic Realities Determine an Entity's Status as an Employer, and Relevant Federal Authority Expressly Contemplates Joint Employers in this Context</u>

PPL relies heavily on the agreement it presents to consumer participants and workers alike, in which both purport to acknowledge that PPL is not the worker's employer and that the consumer participant is. Mot. at 7, 13, 15. However, such an agreement is meaningless.

It is long established that a worker cannot waive FLSA coverage simply by entering into a contract stating that no overtime is due; the same holds true with respect to an agreement purporting to identify which legal entity will be considered the employer. *See Barrentine v.*

---

evidence would be available if discovery were permitted on the working relationship between PPL and Plaintiff or other similarly situated workers, including: (1) the authority to hire and fire employees; (2) the authority to establish compensation, other conditions of employment, and to promulgate work rules; (3) the day-to-day supervision, including monitoring hours worked; and (4) the control of employee records, including payroll, insurance, and taxes. *See* Webber Decl. ¶¶ 5-9.

*Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was deigned to effectuate."); *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944) (contract "cannot be utilized to deprive employees of their statutory rights").

As such, the labels used by the parties (e.g., the assertion that PPL is not the employer of Plaintiff) do not control whether there is an employment relationship; rather, the FLSA's test for employment – the economic realities test – governs. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (finding persons were employees despite their insistence they were volunteers, holding "these protestations, however sincere, cannot be dispositive. The test of employment under the Act is one of 'economic reality.'"); *Falk v. Brennan*, 414 U.S. 190, 193, 195 (1973) (despite agreement designating one entity as the employer, economic realities test applied to find both entities were joint employers).[8]

Nor does the common law definition of employer, invoked by Defendant in various documents in reference to the consumer participant, govern the question of whether PPL is Plaintiff's employer. The FLSA has its own definition and test for who is an employer or joint employer.[9] "The Supreme Court has even gone so far as to acknowledge that the FLSA's

---

[8] *See also* AI2014-2 at 5 (an employment analysis is necessary regardless of the name used by the third party (e.g., fiscal/employer agent)), citing DOL guidance that titles are not determinative, *e.g.*, 29 C.F.R. § 541.2 (2017); U.S. Dep't of Labor, Wage & Hour Div., Division Field Operations Handbook § 22a04 (rev. 661 Nov. 29, 2010), *available at* http://www.dol.gov/whd/FOH/FOH_Ch22.pdf (last visited July 13, 2017).

[9] *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947) (FLSA's definitions are "comprehensive enough to require its application" to many working relationships which,

definition of an employer is the 'broadest definition that has ever been included in any one act.'"
*In re Enter. Rent-A-Car Wage & Hour Emp't Pracs. Litig.* (*Enterprise*), 683 F.3d 462, 467-68
(3d. Cir. 2012) (*citing United States v. Rosenwasser,* 323 U.S. 360, 363 n.3 (1945)).

In addition, even assuming that statements from state or federal agencies could impact the
determination of whether PPL was Plaintiff's employer as a matter of economic reality, *see, e.g.*,
*Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) ("employer-employee
classifications under other statutes are not of controlling significance"), the relevant government
agencies in this case *all* contemplated that entities such as PPL might indeed be the joint
employers of workers like Plaintiff.

First, the U.S. Department of Labor (DOL) issued an Administrator's Interpretation that
directly addresses the application of its revised companionship care rules to the Medicaid
programs at issue here.  *See* AI2014-2 at 15, 17. Ex. 3, U.S. Dep't of Labor, Wage & Hour Div.,
Administrator's Interpretation No. 2014-2 at 15, 17 (June 19, 2014), ("AI2014-2"), *available at*
https://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2014/FLSAAI2014_2.pdf (last visited
July 14, 2017).  The Administrator's Interpretation explicitly contemplates that entities other
than the Medicaid recipient would be found to be an employer or joint employer of the workers
providing care under the consumer-directed Medicaid program.  *Id.* at 1-2.  The Department of
Labor concluded that "in most, but not all, consumer-directed models, a third party will be a joint
employer of a provider [worker]."  *Id.* at 2.

---

under the common law control standard, may not be employer-employee relationships);
*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (FLSA's "suffer or permit"
standard for employment "stretches the meaning of 'employee' to cover some parties who might
not qualify as such under a strict application of traditional agency law principles."); *Dole v.
Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (under the FLSA courts define
"'employer' more broadly than the term would be interpreted in traditional common law
applications").

Likewise, the federal Center for Medicaid and CHIP Services (CMCS) issued an Informational Bulletin on July 3, 2014 regarding the interaction of Self-Direction Program Options for Medicaid Payments and FLSA rules for treatment of "companionship services."  Ex. 7, U.S. Dep't of Health & Human Servs., Ctrs. for Medicare and Medicaid Servs., CMCS Informational Bulletin (July 3, 2014), *available at* https://www.medicaid.gov/Federal-Policy-Guidance/Downloads/CIB-07-03-2014.pdf (last visited July 14, 2017).  The CMCS guidance specifically directs states to review programs for compliance with the FLSA, stating "it is anticipated that many states will determine that, for purposes of the FLSA, home care workers in self-direction programs have joint third party employer(s) in addition to being employed by the beneficiary.  In self-direction models where there is a third party joint employer, the DOL regulation states that all work is subject to minimum wage and overtime requirements."  *Id.* at 1. The Bulletin acknowledges that the economic realities test applies and that a third-party joint employer cannot claim the companionship care exemption.  *Id.* at 2.

The state of Pennsylvania also explicitly contemplated a finding that the consumer participant was not the only employer.  The HCBS Waiver application contemplated that the consumer participant may be a joint employer, noting that "[t]he participant may function as the common law employer *or the co-employer* of workers."  Ex. 1 at 170 (emphasis added).  Further, the Grant Agreement between Pennsylvania and PPL contemplated that the overtime provisions of the FLSA might be found to apply to workers providing services through this program. Stewart Decl. Ex. A, Rider 2, at 9.  The consumer participant can, as the Medicaid program contemplates, provide day-to-day supervision over services and have substantial (though not exclusive) control over who provides those services, without becoming the sole employer to the exclusion of joint employers such as PPL.

In short, contrary to the impression that PPL tries to create, there is nothing inherent in the Participant Directed Services program that requires finding that the sole employer is the consumer participant.  Neither CMCS, OLTL, nor any government agency other than the DOL is authorized to opine on whether PPL is Plaintiff's employer or not, and any such opinions are not binding on this Court.  The economic reality of Plaintiff's relationship with PPL, as set forth below, shows that PPL is a joint employer of Plaintiff and similarly situated workers.[10]

C.    PPL Is a Joint Employer of Plaintiff Under the FLSA

1.    The FLSA Recognizes an Employee May Have More than One Joint Employer

The Department of Labor's governing regulations provide that a single worker may be "an employee to two or more employers at the same time."  29 C.F.R. § 791.2(a) (2017).[11]  In such cases, the joint employers are responsible, both individually and jointly, for FLSA compliance, including paying overtime compensation for all hours worked during the workweek. *Id.*; *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) ("The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act."). A worker has joint employers when "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly."  29 C.F.R. § 791.2(b)(3) (2017).  Thus, the focus of the joint-

---

[10] It is also irrelevant that some of the control that PPL exercised may have originated from obligations in its contract with the state of Pennsylvania or from its efforts to ensure compliance with Medicaid regulations.  *See Int'l Union v. Clark*, No. 02-1484 (GK), 2006 WL 2598046, at *6-7 (D.D.C. Sept. 11, 2006) (citing contract provisions authorizing defendant to set standards for employees hired, conduct background checks, and provide training as evidence defendant exercised control over aspects of employment); *303 W. 42nd St. Enters., Inc. v. I.R.S.*, 916 F. Supp. 349, 362 (S.D.N.Y. 1996), *rev'd on other grounds*, 181 F.3d 272 (2d Cir. 1999) (defendant argued control was exercised to prevent violation of laws, but "the critical point is not the motivation for the control, but rather the fact that control is exercised").

[11] For purposes of overtime liability, it is irrelevant whether PPL is Plaintiff's sole employer or one of many joint employers.  *See* 29 C.F.R. § 552.109(a).

employment regulation is the degree to which the two possible joint employers share control with respect to the employee and the degree to which the employee is economically dependent on the purported joint employers.  *Id.*  PPL's status as a joint employer does not turn on showing that it controls each aspect of employment to the exclusion of the consumer participant.[12] Rather, a showing of shared control, including indirect control, is sufficient: "the 'joint employer' concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment."  *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982); *cf. Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141-42, 145-46 (4th Cir. 2017) (finding joint employment where two entities were "not completely disassociated").

### 2.    The Factors Considered in Evaluating Joint Employer Status

The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity."  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).  The Third Circuit has identified four factors as a "starting point" for considering joint employer status:

> [D]oes the alleged employer have: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like.

*Enterprise*, 683 F.3d at 469.[13]  The court considered both direct and indirect control in each area.

---

[12] "[T]he question in 'joint employment' cases is not whether the worker is more economically dependent on [one potential joint employer or another], with the winner avoiding responsibility as an employer."  *Antenor v. D & S Farms*, 88 F.3d 925, 932 (11th Cir. 1996).

[13] The DOL used the same factors in its discussion of joint employment in the context of this Medicaid program, only it divided the second factor into two separate items: (a) establishing wages and benefits, and (b) setting hours and scheduling.  AI2014-2 at 9-14.

*Id.* at 467-69.  Moreover, the Court went on to emphasize that "these factors *do not constitute an exhaustive* list of all potentially relevant facts" and that deciding if a defendant is a joint employer "must be based on a consideration of the total employment situation and the economic realities of the work relationship," without resort to "narrow legalistic definitions."  *Id.*; *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (the touchstone is "economic reality").  Because the ultimate question is whether the worker is economically dependent on the alleged employer, the factors are not considered as a checklist, adding up how many areas an entity controls, but instead are evaluated qualitatively.  *See* 29 C.F.R. § 791.2 (2017); 29 C.F.R. § 500.20(h) (2017); *Charles v. Burton*, 169 F.3d 1322,1329  (11th Cir. 1999); *Lopez v. Silverman*, 14 F. Supp. 2d 405, 414-17 (S.D.N.Y. 1998).

There is no question that Plaintiff is economically dependent upon PPL.  The consumer participants do not have money of their own to pay workers for their services.  Moreover, PPL has submitted documents demonstrating that Plaintiff's and other workers' continued employment was explicitly conditioned on the consumer participants' ongoing enrollment in the PDS program that PPL administered.  Dkt. 12-2 at 37-39, 49-51, 72-74, 84-86, 93-95; Dkt. 12-3 at 3-5, 15-17, 58-60, 70-72.  *See Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1385 (3d Cir. 1985) (test for economic dependence is "whether the workers are dependent on a particular business or organization for their continued employment").

As set forth in detail above, PPL does not operate as a traditional agent, chosen freely by the consumer participant and acting only at the consumer participant's direction.  *Supra* at 3-4.  Instead, PPL's influence permeates every aspect of the employment relationship.  PPL provides direction to the consumer participant and takes actions without any consumer-initiated request.  *Id*.  If PPL believes that the consumer participant is not making good decisions, PPL can seek to

have a representative appointed for the consumer participant, effectively removing the consumer

participant as even a *pro forma* "employer." *Supra* at 4.

Accepting as true the well-pled allegations of the complaint, PPL exercises control over

virtually every aspect of the employment relationship. The evidence submitted by Plaintiff and

PPL also leads to the same conclusion: at a minimum there are disputes over material facts and,

accepting Plaintiff's evidence as true, PPL cannot escape its status as a joint employer.

3.    PPL Controlled the Hiring and Firing Process for Workers and
Requirements that the Workers and Consumer Participants had to Follow

PPL played an important role in hiring and regularly "requalifying" workers like Plaintiff

Talarico. As discussed above at 5-6, PPL was responsible for verifying that Plaintiff met all of

the qualifications for the position, including completing training; made his employment

contingent upon clearing a background check; and would bar him from the program if it found he

appeared on a list of individuals ineligible to participate.[14]  In addition, PPL trained the consumer

participants on how to select and hire a worker and guided them through every step of the

process. *Supra* at 4.  These facts demonstrate that PPL shared authority over hiring. *Gary*

*Rapczynski, et al. v. Directv, LLC, & MasTec N. Am., Inc.*, No. 3:14-CV-2441, 2016 WL

1071022, at *5 (M.D. Pa. Mar. 17, 2016) (where defendant required workers to obtain certain

certifications before being assigned to work for it and imposed quality standards, inference that

defendant had authority over hiring was reasonable); *see also* AI2014-2 at 10 (imposing

---

[14] That Plaintiff himself never was ineligible, or that PPL rarely had reason to remove any
worker from the program as ineligible does not change the fact that PPL's own agreement makes
clear it retained the power to terminate any worker who appeared on the ineligible list.  Dkt. 12-2
at 38, 50, 73, 85, 94; Dkt. 12-3 at 4, 16, 59, 71; *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1064
(E.D. Wash. 2013) (explaining that the frequency with which the entity exercised its right to fire
is not indicative of employment; the fact that the entity had the power to fire is what is relevant
to the economic realities test); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d
Cir. 1999) (observing that joint employer's exercise of limited or occasional control did not
remove employment relationship from protections of the FLSA); AI2014-2 at 10.

qualifications on providers, such as fulfilling state-administered training requirements, should be considered a strong indicator of employer status); *see also Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (in similar home care program where the recipient of services had substantial say over selection of the workers, while defendant had indirect control, the court held that "Regardless of whether the appellants are viewed as having had the power to hire and fire, their power over the employment relationship by virtue of their control over the purse strings was substantial.").

PPL asserts baldly that it had no authority over hiring and on that basis alone could not have been Plaintiff's employer. Mot. at 15. Defendant is wrong both as a matter of fact, *see* above at 5-6, and as a matter of law. Neither of the two cases it cites relied on lack of hiring authority alone. For example, *Garcia v. Nunn*, No. 13-6316, 2015 WL 5585451, at *4 (E.D. Pa. Sept. 23, 2015), cited a laundry list of factors for which there was not even any allegation of involvement by the purported joint employer, who had contracted with the primary employer for cleaning services to be performed at his stores. *Id.* ("no mention in the amended complaint that Defendant Weis had the authority to hire and fire the plaintiff employees, that it trained the employees, that it paid the employees directly, or that it set the employees' conditions of employment in terms of compensation, benefits, and work schedules, including the rate and method of payment.").

Similarly, in *Yue Yu v. McGrath*, 597 F. App'x 62, 66 (3d Cir. 2014), the plaintiff worked on a specific project through a contract her employer entered into with a staffing agency, which in turn had an agreement through a consulting firm to place her with the defendant. The fact that defendant could not fire her from her position with her primary employer, but only terminate her assignment with defendant was hardly the only factor weighing against a finding of joint

employer.  *Id.*  Instead, the court also noted that the defendant "did not set Yu's compensation, benefits, or rate and method of payment," "had no control over payroll, insurance, or tax records," and even gave performance feedback in part through the intermediary agencies.  *Id.*

It is hardly surprising that the cases PPL cites did not, in fact, turn on any one factor, since the Third Circuit in *Enterprise* specifically cautioned against such an approach and has also flatly held that "[w]e do not agree that power to hire and fire is dispositive."  *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 418 n.9 (3d Cir. 2012).

Moreover, PPL could and did terminate employees, a significant factor in the joint employment analysis.  Complaint ¶¶ 28, 31; *supra* at 6-7 (describing PPL's termination of Plaintiff as to EJ).

Considering the evidence of shared and indirect control exercised by PPL, in light of the governing standard, this factor weighs in favor of finding that PPL was a joint employer, whether based on the well-pled allegations alone or on the extrinsic evidence.  This evidence demonstrates that PPL had substantial authority to hire and fire, or at least creates genuine disputes of fact on this point.  Even if PPL had not had such direct involvement in hiring and firing, its "power over the employment relationship by virtue of [its] control over the purse strings was substantial"; this fact alone is sufficient to weight this factor in favor of an employment relationship.  *Bonnette*, 704 F.2d at 1470.

4.    PPL Controls Compensation, Benefits, General Rules, and Total Hours

PPL dictates wage rates.  Setting a wage rate is considered by the Department of Labor to be "so fundamental to the ultimate question of economic dependence that any entity that sets a wage rate will likely be considered an employer."  AI2014-2 at 11.  Case law also supports the idea that control over the payrate is a strong factor in identifying an employment relationship.  In *Barrientos v. Taylor*, 917 F. Supp. 375 (E.D.N.C. 1996), a farm labor contractor depended on

cash from the farm owner to such an extent he had no discretion in setting the pay rates for plaintiffs, so the court concluded that "[e]ssentially, the [farm owner] dictated what plaintiffs would receive" and was a joint employer. *Id*. at 382-83. Similarly, in *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235 (5th Cir. 1973), the Fifth Circuit found that the defendant set the workers' pay, determined whether to pay on an hourly or piece-rate basis, and deducted Social Security contributions, all of which weighed strongly in favor of finding a joint employment relationship. *Id*. at 238.

   As discussed in detail above at 7-8, PPL exercised substantial control over the payrate for Plaintiff and similarly situated workers. The very documents PPL has submitted in support of its bid for summary judgment make explicit that PPL informs the consumer participant of the acceptable rate and asks the consumer participant to complete a form specifying that rate, which PPL then reviews to ensure compliance with the approved rate before implementing that rate. Ex. 1 at 213. While PPL claimed to act under the consumer participant's direction in making changes to pay rates, there is a substantial dispute of fact on this point. In addition to the evidence that PPL informed the consumer participant of the approved rate, rather than permitting the consumer participant free choice of a rate, Plaintiff attests that on at least one occasion his rate was changed at PPL's direction, rather than upon the consumer participant's initiative. Talarico Decl. ¶ 8. Another worker reported that PPL barred a consumer participant from giving her a raise. Jackson Decl. ¶ 6.

   With respect to the hours Plaintiff worked, PPL informed Plaintiff of the number of hours per week that he was authorized to work for each consumer participant; only the specific schedule as to what time of day those hours were worked was determined by the consumer participant. Talarico Decl. ¶ 8; EW Decl. ¶ 7. DOL guidance states that when an entity "sets an

explicit number of hours for which the consumer may receive home care services from which the consumer may not deviate, and the consumer controls the scheduling within that timeframe," that is a moderate indicator of employer status for the entity. AI2014-2 at 13. It is hardly unusual for a client receiving services performed by employees of a third party to have control over when the work is completed, and such control has not been deemed sufficient to establish the client as the sole employer. *Garcia*, 2015 WL 5585451, at *4 (defendant was not a joint employer, even though it controlled the schedule on which cleaning services were performed on its premises); *Yue Yu*, 597 F. App'x at 66 (client oversaw assignments, but was not joint employer).

In addition to its control over wages, PPL informed Plaintiff of rules that governed his work and insisted he agree to comply with those rules in order to keep his position. Dkt. 12-2 at 37-39, 49-51, 72-74, 84-86, 93-95; Dkt. 12-3 at 3-5, 15-17, 58-60, 70-72.

Given PPL's significant control over setting pay rates, imposing various work rules, and enforcing a cap on hours worked each week, this factor strongly favors a finding that PPL is Plaintiff's employer, whether based on the well-pled allegations or after considering extrinsic evidence that establishes at least disputes of material fact on these issues.

        5.    <u>Day-to-Day Supervision of Work</u>

The consumer participants provide day-to-day supervision of Plaintiff and the other workers, albeit after receiving training and orientation from PPL on how to do so. *Supra* at 4. This day-to-day supervision is common when, for example, staffing agencies provide workers for their clients, and it does not undermine the role of the staffing agency as employer, nor should it undermine PPL's status as a joint employer here. In *Garcia*, this district described this level of supervision as acting as "any consumer would who was paying for a service. It contracted for its stores to be cleaned on a nightly basis, and it made certain that the service for which it paid was performed properly." 2015 WL 5585451, at *4; *see also Yue Yu*, 597 F. App'x

at 66; *Bonnette*, 704 F.2d at 1470 (recipient of services provided day-to-day supervision, but state was nonetheless the employer).  While a client that is sufficiently involved may, unlike the defendant in *Garcia*, be found to be a joint employer along with the agency that directly employs the worker, the agency is not let off the hook simply because the client provides day-to-day supervision.  Similarly, verifying the hours worked at the client's location is considered a normal client action that does not shift employment status from the agency to the client.  *Yue Yu*, 597 F. App'x at 66 (client approved timesheets, was not employer); *Garcia*, 2015 WL 5585451, at *2, 4.

In *Baystate*, a staffing agency denied that it was the employer of the workers it provided to various clients, claiming they were either independent contractors or employees only of the client where they performed their work duties.  *Baystate*, 163 F.3d at 676.  The First Circuit found that the staffing agency was a joint employer, applying factors similar to the Third Circuit's *Enterprise* test.  The court specifically held that supervision of day-to-day work by the client instead of the agency was irrelevant given all of the other direct and indirect control the defendant exercised.  *Id.*

Reporting hours worked is also considered under this factor, and here again, PPL plays a substantial role.  Plaintiff is required to use PPL's online portal to report his hours.  At times those hours may be confirmed by the consumer participant, but the only completed timesheets produced by PPL show no approval was registered.  Dkt. 12-2 at 62, 111; Dkt. 12-3 at 35, 82.  Such a system, where verification from the consumer participant is not required, has been recognized by the DOL as a strong indicator that the entity is an employer.  Even if the consumer retains the ultimate responsibility for verifying or approving Plaintiff's or other workers' timesheets, this factor is a moderate indicator that the entity is an employer.  AI2014-2 at 13

24

n.10.

Whether based on the well-pled allegations or after considering extrinsic evidence establishing disputes of material fact, nothing in the consumer's day-to-day supervision weighs against finding that PPL is a joint employer, considering all of the other factors.  And PPL's system, in which Plaintiff submits his time directly to PPL through its computerized portal, provides further evidence that PPL is at least one of his employers.

6.    PPL Controls Payroll and Other Aspects of Employment Administration and Maintains All Employment Records

PPL carries out all core employer functions: ensuring required documentation such as I-9 forms are completed at the time of hire, maintaining all employment records, processing payroll, issuing checks, computing required withholdings and making payments to the IRS, issuing W-2 forms annually, and obtaining workers' compensation insurance.  It seeks to frame all of these activities, for which it is solely responsible, as tasks it carries out as the agent of the consumer participant.  Mot. at 9, 19-20.  However, aside from the fact that it presents no evidence whatsoever that any consumer participant has ever directed PPL to engage in such activities on his or her behalf, PPL's argument fails in the face of case authority.  In *Falk*, for example, the Supreme Court made short work of finding that a real estate management company that contracted with building owners to manage apartment buildings was a joint employer of the maintenance workers, despite the contract between the building owners and management company identifying the maintenance workers as employees of the building owners.  *Falk*, 414 U.S. at 192-95.  The management company in *Falk* was responsible for paying the maintenance workers, just as PPL is responsible here.  The fact that the defendant in *Falk* was acting under the "nominal supervision" of the building owners did not relieve it of employment responsibility.  *Id.*

*Godlewska v. HDA*, 916 F. Supp. 2d 246, 262 (E.D.N.Y. 2013), *aff'd sub nom.*

25

*Godlewska v. Human Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014), cited by PPL, lends further support for the conclusion that this factor strongly favors finding PPL is a joint employer. The court in *Godlewska* noted that all the employment records were maintained by the home care agency, which weighed in favor of the agency being the employer.

Contrary to PPL's claim, there is no evidence that any consumer participant compiled, maintained, or transmitted records of hours worked to PPL. Mot. at 19, citing Stewart Decl. ¶¶ 24, 35, 44, 54. The cited paragraphs of the Stewart Declaration refer only to the consumer participant approving the hours worked, not compiling, maintaining, or transmitting those hours. Indeed, the rest of the Stewart Declaration directly undermines such a claim, since it describes Plaintiff entering his hours worked into an on-line system maintained by PPL.[15] Stewart Decl. ¶¶ 23, 34, 43, 53. The claim that the consumer participant "must" approve those hours in the same on-line system is undermined by the sample of timesheets attached, none of which include any evidence of approval by the consumer participant. Dkt. 12-2 at 62, 111; Dkt. 12-3 at 35, 82.

This factor, whether evaluated on the well-pled allegations of the complaint or on the extrinsic evidence confirming those allegations, weighs strongly in favor of finding that PPL is a joint employer, particularly when drawing all reasonable inferences in favor of Plaintiff.

D.     PPL Is Plaintiff's Employer Under Pennsylvania Law

Pennsylvania's Minimum Wage Act (MWA) largely tracks the federal FLSA[16] and, in

---

[15] Further, the HCBS Waiver Application reflects that PPL committed to "distribute, collect and process support worker timesheets." Ex. 1 at 24-25. Workers were also expected to submit timesheets directly to PPL. Ex. 1 at 214.

[16] With respect to the scope of the companionship exemption at issue in this case, however, Pennsylvania law does not exactly track federal law. Instead, Pennsylvania's overtime exemption has excluded Plaintiff and other workers for the entire class period, entitling Mr. Talarico and those he seeks to represent to unpaid wages for the full class period under state law. *See, e.g.*, 43 Pa. Stat. Ann. §§ 260.3(a), 260.5(a), 333.105(a)(2). In contrast, the federal law's similar revision took effect only on January 1, 2015. 29 C.F.R. § 552.109(a).

similar contexts, courts have relied on FLSA principles and case law to interpret open questions in the MWA.  *See, e.g.*, *Commonwealth, Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870 (Pa. Commw. Ct. 2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253 (2004).  In *Stuber*, for example, the state court imported the definitions of "employ," "employer," and "employee," as well as the economic realities test, from the FLSA to evaluate an independent contractor issue under the MWA.  *See id.* at 873-74.  In line with several courts, this Court should rely on FLSA standards more broadly to interpret the employer issue in this case.  *See, e.g.*, *Bayada Nurses, Inc. v. Commonwealth, Dep't of Labor & Indus.*, 958 A.2d 1050, 1058 (Pa. Commw. Ct. 2008), *aff'd*, 607 Pa. 527, 8 A.3d 866 (2010).[17]  Should this Court apply the economic realities test to the present analysis, as Defendant agrees, Mot. at 22, PPL's motion for judgment on this count should be denied for the reasons stated above.

Defendant's citation to *Markham v. Wolf*, 147 A.3d 1259 (Pa. Commw. Ct. 2016), has no bearing on this issue.  *Markham*, decided by the Commonwealth Court, involved the Governor's power to issue an Executive Order providing for a form of collective-bargaining by workers.  *Id.* at 1262-63, 1275.  The court's acceptance of the consumer participants as the workers' employers was urged by the petitioners in that case, who sought standing as employers to challenge the Executive Order.  *Id.*  PPL's status, however, was not before the court and was not

---

[17] Prior to *Bayada*, some courts declined to use the FLSA standards to interpret "employer" under the MWA.  *Dailey v. Progressive Corp.*, No. CIV.A. 03-3797, 2003 WL 22794689, at *4 n.11 (E.D. Pa. Nov. 12, 2003).  The *Dailey* court did not adopt any specific test, but concluded that Pennsylvania courts likely "would interpret the MWA's use of the term 'employer' expansively enough to cover [the defendant]" and denied the motion to dismiss.  *Id.* at *4.  This approach comports with the broad remedial purposes of the MWA and would be appropriate here as well.  *See Espinoza v. Atlas R.R. Constr., LLC*, 657 F. App'x 101, 111 (3d Cir. 2016).  Under the broad language and purposes of the MWA, Plaintiff states a valid claim that PPL is one of Plaintiff's employers.  Thus, regardless of whether the FLSA standards are followed or the MWA language and purpose is considered alone, the same result should be reached: PPL's motion should be denied as to Plaintiff's state law claims.

addressed.  Plaintiff concedes that the consumer participants may be joint employers of the

workers *with* PPL; but this is irrelevant.  *Supra* at n.11.  The status of consumer participants as

employers does not diminish PPL's status as a joint employer.  *Markham*, therefore, should have

no bearing on this Court's analysis of the pending employment issue under Pennsylvania's wage

laws.[18]

E.    The Pennsylvania Wage Payment Collection Law Applies

Plaintiff may use Pennsylvania's Wage Payment Collection Law (WPCL) to seek redress

for unpaid wages in two contexts.  The first exists where a contract or agreement entitles the

worker to certain wages.  *See, e.g.*, *Andrews v. Cross Atl. Capital Partners, Inc.*, 158 A.3d 123,

133-34 (Pa. Super. Ct. 2017).  Whether the contract must be written or may instead be oral or

implied remains an open question that must survive a motion to dismiss.  *Cf. Woodard v. FedEx

Freight E., Inc.*, 250 F.R.D. 178, 184 (M.D. Pa. 2008) (noting this open question); *Hartman v.

Baker*, 766 A.2d 347, 351 (Pa. Super. Ct. 2000) (finding that a contract sufficient for WCPL

liability had been formed by conduct, rather than a signed document); *Zebroski v. Gouak*, No.

09-1857, 2009 WL 2950813, at *1 (E.D. Pa. Sept. 9, 2009) (permitting allegations of an oral

agreement to survive summary judgment).  At minimum, Plaintiff has alleged a contract for his

employment with PPL by virtue of PPL's name and logo appearing on all the contractual forms.

---

[18] Similarly, PPL's citations to "three collateral administrative decisions outside the
Commonwealth" should be disregarded.  Mot. at 23.  These opinions arose under entirely
different statutory schemes and HCBS waiver programs, and PPL has failed to demonstrate how
those schemes correlate to the one before this Court.  The opinion letter from the Governor's
Office of General Counsel also should receive little attention from this Court.  It is not
controlling on this Court; indeed, by its own language, it asserts that it "does not constitute an
adjudication or binding norm."  *Id.*; *see also supra* at 12-15.  Its statements about a fiscal agent's
relationship with a worker, *see* Dkt. 12-3 at 95, are based on eight-year-old hypothetical facts
(before the current OLTL program was in place) that contradict the facts alleged by Plaintiff
herein, the latter of which is subject to deference by the Court.  At a minimum, this letter creates
a triable issue of fact; at best, it fails to undermine Plaintiff's well-pled allegations and should be
disregarded at this stage of the proceedings.

*See supra* at 5.  In the alternative, Plaintiff has alleged an implied contract with PPL, as his employer, to perform the responsibilities of his job in exchange for proper and timely payment. *Cf. Hartman*, 766 A.2d at 351.  These allegations are sufficient to withstand a motion to dismiss on this claim or, based on the evidence furnished in the Motion and Response, to create a fact issue that withstands summary judgment.

The second context also applies here and permits plaintiffs to use the WPCL as a vehicle to enforce their rights to recover unpaid wages owed under another statute, such as the MWA, "regardless of the source of their employer's obligation to pay the wages."  *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Ct. 2009); *Hively v. Allis-Chalmers Energy, Inc.*, No. CIV.A. 13-106, 2013 WL 2557629, at *2 (W.D. Pa. June 10, 2013) (internal citations and quotation marks omitted).  Since *Lugo*, several courts have permitted plaintiffs to bring WCPL claims without the existence of a written contract.  *See, e.g.*, *Zebroski*, 2009 WL 2950813, at *1 (denying a motion to dismiss a WCPL claim that sought to enforce MWA rights); *Turner v. Mercy Health Sys.*, Nos. 3670 & 5155, 2010 WL 6761223 (Pa. Ct. Com. Pl. Mar. 10, 2010) (same).  This Court should do the same and hold that Plaintiff Talarico has stated a legally cognizable WPCL claim to enforce his MWA rights, even if it finds that a written contract does not exist between Plaintiff and PPL.  On both bases addressed herein, the Court should deny PPL's motion to dismiss of for summary judgment on this count.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied.


July 14, 2017                                    Respectfully submitted,


                                                *Christine E. Webber*
                                                COHEN MILSTEIN SELLERS & TOLL PLLC

Christine E. Webber, DC Bar No. 439368*
Miriam R. Nemeth, DC Bar No. 1028529*
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone:  (202) 408-4600
cwebber@cohenmilstein.com
mnemeth@cohenmilstein.com

ARNOLD, BEYER & KATZ
Richard Katz, PA Bar No. 20702
140A East King Street
Lancaster, PA 17602

NICHOLS KASTER, PLLP
Rachhana T. Srey, MN Bar No. 340133*
Robert L. Schug, MN Bar No. 0387013*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 215-6870
srey@nka.com
schug@nka.com

*Pro Hac Vice

Attorneys for Plaintiff Ralph Talarico, the
putative FLSA Collective, and the putative Rule
23 Class

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I electronically filed the *Plaintiff's Opposition to Motion for Summary Judgment* with the Clerk of the Court using the ECF, who in turn sent notice to the following:

Jonathan R. Nadler, Esq. (PA ID 80998)
Eckert Seamans Cherin & Mellott, LLC
50 South 16th Street, 22nd Floor
Philadelphia, PA  19102
(215) 851-8410
jnadler@eckertseamans.com


*/s/ Christine E. Webber*
Christine E. Webber