# Exhibit 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH TALARICO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>PUBLIC PARTNERSHIPS, LLC, d/b/a PCG PUBLIC PARTNERSHIPS,<br><br>    Defendant. | Case No. 17-2165 |

## DECLARATION OF SHANEENA JACKSON

1. My name is Shaneena Jackson. I am a female, over the age of 21, who resides in Philadelphia, Pennsylvania. I make this declaration on personal knowledge. If called to testify, I would provide the same testimony as stated herein.

2. From 2009 through March 2015, I was employed as a direct care worker. I began working with Liberty Resources; in approximately January 2013 they were replaced by Public Partnerships LLC ("PPL"). During this time, my sole client was my mother, Rosita Clark. I cared for her full-time in our home including cooking, assisting with personal care, and escorting her to doctor's appointments and shopping.

3. When PPL took over from Liberty Resources, I was required to attend a seminar downtown in Philadelphia. This was not my mother's idea, but PPL required me to attend and, afterward, to review and sign lots of paperwork as a condition of my continued employment. It is my understanding that CPR and other training was also required by PPL, but I believe I was exempt because I am a CNA and so did not need to attend those particular classes.

4. Among the papers PPL required me to sign was one designating my mother as my common law employer. However, I am not familiar with that term and don't know the significance. I only know that I was required by PPL to sign that document as a condition of continued employment.

5. My job duties were outlined in a job description that PPL issued for direct care workers that included a general set of parameters reflecting my day-to-day work, described above. PPL also provided a handbook for direct care workers that contained a code of conduct with guidelines related to timeliness and work dress code.

6. My rate of pay was determined by PPL with input from my mother. Specifically, PPL gave my mother wage cap of $13 on my wages and told her she had the "option" to select

2258895.1

        my pay rate within that limit.  To give me a raise up to this cap, however, my mother had to submit a request to PPL for approval, and PPL controlled the frequency with which raises could be given.  At one point, my mother was told that PPL stopped giving raises due to a budget freeze, and that requests for wage increases during the freeze would be denied.

7.      PPL set up the timekeeping system I used to track my hours worked. My mother would sign off on my timesheets each week indicating that I had provided the hours of service reported in the PPL system.

8.      I have had numerous issues over the years with not being paid correctly (or at all), and PPL did not permit my mother, the client, to resolve the issue for me.  On more than one occasion, I could not fax in my time sheet due to a PPL system glitch.  In those cases, my paycheck wasn't processed, and there was no way for my mother to intervene to set things right; PPL controlled my pay.  I ended up waiting a full pay period to get paid.

9.      I received my paychecks and my W-2 tax forms from PPL.

10.     Throughout my time employed by PPL, I worked over 40 hours per week almost every week.  The hours steadily increased as my mother's condition worsened and, by 2015, I worked up to 52 hours per week. Every time that I worked over 40 hours per week, I recorded this on my timesheet and submitted it to PPL.  I was never compensated time and a half for the hours I worked over 40 per workweek.

        I declare, under penalty of perjury that the foregoing is true and correct.

DocuSigned by:
*Shaneena Jackson*                      7/13/2017
9E35D0EAA751459...
Shaneena Jackson                            Date

2258895.1