IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RALPH TALARICO, individually and on behalf
Of all others similarly situated,

          Plaintiff,

    v.

PUBLIC PARTNERSHIPS, LLC, d/b/a PCG,
PUBLIC PARTNERSHIPS,

          Defendant.

CIVIL ACTION
NO. 17-2165

**MEMORANDUM**

**Schmehl, J.** _s/JLS_                                        **May 12, 2022**

      Before the Court is the motion for class certification and final collective class certification of Plaintiff, Ralph Talarico ("Plaintiff" or "Talarico"). Defendant, Public Partnerships, LLC, d/b/a PCG, Public Partnerships ("PPL"), has opposed the motion, and Plaintiff has filed a reply. Having read the parties' briefing and after oral argument on the issue, Plaintiff's motion shall be granted.

## I.     **INTRODUCTION**

      Plaintiff filed this Collective Action and Class Action Complaint alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201, _et seq._) ("FLSA"), the Pennsylvania Minimum Wage Act of 1968 (43 P.S. 333.101 _et seq._) ("MWA") and the Pennsylvania Wage Payment and Collection Law (43 P.S. 260.1 _et seq._) ("WPCL"). Specifically, Plaintiff and the proposed class members all claim that PPL is their joint employer, and that following its stated policies consistently as to all class members, PPL refused to pay all overtime premiums due when plaintiffs worked over 40 hours in a

workweek. PPL contends that it is not Plaintiff's employer and therefore, is not in violation of any of the above-referenced statutes.

## II.   **PROCEDURAL HISTORY**

On May 11, 2017, Plaintiff filed his complaint in this case, which he amended on September 14, 2018. ECF 75. Plaintiff brought collective action claims for failure to pay overtime wages in violation of the FLSA, and class claims for failure to pay overtime wages in violation of the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law. Plaintiff brought these claims on behalf of himself and all other similarly situated Direct Care Workers ("DCWs") who worked over forty hours per week but were denied overtime payments at any time during the class period. On September 4, 2018, Plaintiff's motion for conditional certification of the collective action was granted. Over 4,900 individuals opted-in to the FLSA collective action.

After an extensive period of discovery, on March 8, 2019, Defendant filed its Motion for Summary Judgment, arguing that it is not a joint employer of plaintiffs and therefore cannot be liable for unpaid overtime to them. After opposition to the motion was filed, oral argument was held, and on January 28, 2020, Defendant's Motion for Summary Judgment was granted, and this matter was dismissed. Subsequently, Plaintiff appealed to the United States Court of Appeals for the Third Circuit. On December 7, 2020, the Third Circuit reversed the decision of this Court and remanded it for further proceedings, finding that there were disputes of fact which precluded summary judgment on the question of whether PPL was a joint employer of the DCWs. Thereafter, on March 5, 2021, Plaintiff filed the instant motion for class certification. Argument was held on the motion, and it is now ready for decision.

### III.   <u>FACTUAL BACKGROUND</u>

Defendant PPL is a Delaware corporation headquartered in Boston that provides homebased direct care services, including personal care and domestic assistance, to individuals with disabilities, called participant-employers. ("PEs"). The home care services provided by Talarico and the DCWs at issue in this case are paid for by Medicaid through the Participant Directed Services ("PDS") program, part of the Home and Community-Based Services ("HCBS") program. Pennsylvania uses PPL as an intermediary to implement its PDS program. ECF 219, Ex. 4, Stewart Declaration, ¶¶ 3-4, 11; Ex. 1, Stewart dep., pp. 61, 111. PPL's role is to "reduce the employer-related burden for participants," and "mak[e] sure Medicaid and Commonwealth funds used to pay for services and supports . . . are managed and dispersed appropriately as authorized." ECF 219, Ex. 4, ¶¶ 3, 11; Ex. 7, Waiver Appl. at 15. PPL is the sole fiscal agent in Pennsylvania and acts to ensure consistent rules are applied and followed by all PEs and DCWs across the Commonwealth.

PPL requires participants to enroll by completing PPL forms before it will pay the DCWs. PPL informs the PEs of the duties it will undertake as their agent and PEs authorize PPL to handle various tax issues. ECF 219, Ex. 9, PPL Common Law Employer Packet at 1015. PPL trains PEs on hiring, training, supervising, and setting wage rates for DCWs, and workplace safety. ECF 219, Ex. 11, Grant Agreement ("Grant Agmt."); Ex.1, Stewart Dep. at 114-116, 117-118; Ex. 12, PPL Consumer-Participant Handbook ("PPL Handbook") at 1259-1274.

In terms of hiring, PPL requires all DCWs to complete an application, meet certain qualifications, undergo a background check, and sign the same DCW Agreement.

ECF 219, Ex. 20, New DCW Packet at 1044-46, 1048; Ex. 14, 2012 RFP at 4002-05; Ex. 18, DCW Informational Packet ("DCW Packet") at 1925, 1929; Ex. 1, pp. 72-73, 140, 145; Ex. 8, New CLE Forms at 995. After receiving the required paperwork, PPL determines if each DCW is qualified. ECF 219, Ex. 1, p. 59; Ex. 14 at 4417-4420. PPL also verifies each DCW's citizenship or work authorization and requires them to submit to criminal background checks and child abuse clearances before they are hired, and periodically thereafter. ECF 219, Ex. 1, pp. 55, 154-155; Ex. 18 at 1925, 1942; Ex. 15 at 1868-1869. PPL prohibits DCWs from providing services to any PE and refuses to pay them if they are on the state's List of Excluded Individuals and Entities. ECF 219, Ex. 20 at 1045; Ex. 1 at 134-135, 143; Ex. 14 at 4006.  PPL conducts each of these checks for every DCW regardless of whether the participant wants them done. ECF 219, Ex. 1 at p. 323. Once PPL is satisfied that these steps are complete, it determines that a DCW is "good to go," which is the prerequisite before DCWs may begin work and be paid. ECF 219, Ex. 4 at C2-4; Ex. 1, pp. 79, 86, 138-139.

PPL requires that all DCWs requalify every two years, repeating the process from initial hiring, and if that process is not completed on time, PPL will not pay the DCW for work performed before PPL decides that the DCW is again "good to go." ECF 219, Ex. 1, 161-220; Ex. 24, Dep of EW, p. 94. PPL requires all DCWs and participants to sign the same DCW Agreement. The Agreement dictates the duties DCWs agree to perform, and the terms DCWs agree to in order to be paid. ECF 219, Ex. 20, pp. 1044-1046; Ex 10, DS dep., pp. 82-83, 88-89; Ex. 21, Talarico dep., p. 103. PPL maintains rules that are applicable to all DCWs, including requiring all DCWs to report abuse, neglect, or "critical events" to the participant's service coordinator and requiring all DCWs to participate in

meetings about the participant when asked to do so. ECF 219, Ex. 1, pp. 147-148; Ex. 20 at 1045.  PPL also requires DCWs to complete mandatory orientations and trainings before providing services to PEs. ECF 219, Ex. 20, p. 1045; Ex. 1, pp. 24-25, 258-259, 266.

   PPL pays DCWs directly and later receives reimbursements from Pennsylvania for those wages. ECF 219, Ex. 1, pp. 234-236. PPL "is responsible for informing the PE of the established rate" for the services he or she receives. ECF 219, Ex. 7, p. 213; Ex. 1, p. 172; Ex. 6, MJ dep., p. 126; Ex. 24, EW dep., pp. 75-77. PPL calculates and occasionally recalculates the maximum wage rate each PE may pay a DCW after funds are deducted for workers' compensation, unemployment insurance, and payroll taxes. ECF 219, Ex. 1, pp. 173-174; Ex. 18, DCW packet at 1932. PPL provides PEs with guidance about selecting wage rates within its guidelines. ECF 219, Ex. 12, PPL Handbook, p. 1267; Ex. 1, pp. 176-179. After the PE requests a particular wage rate, PPL reviews and confirms that the requested rate is within its guidelines. ECF 219, Ex. 7, p. 213; Ex. 1, pp. 180, 182. PEs cannot select rates above the maximum calculated by PPL. ECF 219, Ex. 1, pp. 180-181; Ex. 31, Simms dep. p. 36; Ex. 24, EW dep., p. 77; Ex. 6, MJ dep., p. 72. PPL reviews wage rates selected by the PEs to make sure they do not exceed the maximum allowable rate. ECF 219, Ex. 1, p. 180. There have been occasions when PPL has had to reduce a DCWs hourly rate. ECF 219, Ex. 1, pp. 185-186; Ex. 35, Rate Reduction Letter.

   It is undisputed that prior to January 1, 2016, DCWs were not paid overtime if they worked more than 40 hours per week. ECF 219, Ex. 1, p. 268. It is also undisputed that after January 1, 2016, PPL paid the overtime rate of 1.5 to DCWs if they worked more than 40 hours for the same PE and did not reside in the PE's home. ECF 219, Ex. 1, p. 278. However, a DCW who worked more than 40 hours per week for more than one PE or a

DCW who was classified as a "live-in" were not eligible to receive overtime compensation. ECF 219, Ex. 1, pp. 283, 285; Ex. 21, pp. 68, 70-71, 255; Ex. 2, Horvath dep., pp. 158-159.

All DCWs and PEs must report hours worked using PPL timesheets or the PPL online portal. PPL reviews the timesheets to ensure compliance with the number of hours established in the participant's Individual Service Plan (ISP). ECF 219, Ex. 1, pp. 212-213, 237; Ex. 7, p. 159. PPL also reviews timesheets to ensure no overlap with time reported for that PE from any other DCWs. ECF 219, Ex. 2, pp. 88, 90, 94-96. If PPL determined that a timesheet was not in compliance with its rules, the timesheet would not be paid, even if the PE wanted payment to be made. ECF 219, Ex. 2, pp. 118-119; Ex. 5, LZ dep., pp. 143-144.

DCWs are required to address any issues with timesheets and/or payment with PPL; the PE could not be of any assistance in this regard. ECF 219, Ex. 6, MJ dep., pp. 125-126; Ex. 22; Lang dep., pp. 53-54, 113-116; Ex. 38, Santiago dep., pp. 72-73, 74; Ex. 21, pp. 267-268, 269-272.

PPL is responsible for obtaining workers' compensation and unemployment insurance, withholding taxes and making required tax filings for the PE, preparing and issuing payroll checks to the DCW (including withholding payroll taxes), processing any judgments or garnishments of wages as required by law, and issuing W-2 forms for all DCWs. ECF 219, Ex. 1, pp. 42, 84, 158, 189-190, 234, 237; Ex. 15, 2014 Request for Proposal, pp. 1801-1810, 1870-1871, 1878-1880, 1884-1900, 1909-1910, 1913-1917. PPL creates and controls the timesheets and online timekeeping system that all DCWs use, and issues payroll checks to all DCWs bearing its logo and name. ECF 219, Ex. 6, pp. 124-125; Ex. 24, pp. 71-72; Ex. 15, pp. 1878-1884; Ex. 4, Stewart Decl. at C28, D42, E35, F27; Ex. 21, pp. 146, 171.  PPL also issues W-2 forms listing the employer as "Public Partnerships

for PA HH ER Agent for (redacted)". ECF 219, Ex. 21, C29-31, D43-45, E36-37, F28-29, Ex. 21. PPL also directs DCWs that they can apply for unemployment, and how to apply. Talarico himself applied for unemployment, named PPL as his employer, and received benefits. ECF 219, Ex. 21, pp. 42-43.

**IV.** **LEGAL STANDARD**

Generally, in order to certify a class action, a court must find that the four requirements of Rule 23(a) are met. Rule 23(a) allows class certification only if:

> 1) the class is so numerous that joinder of all members is impracticable;
> 2) there are questions of law or fact common to the class;
> 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
> 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, because Plaintiff seeks to certify a class action under Rule 23(b)(3), he must also satisfy the additional requirements of that subsection. Rule 23(b)(3) requires that "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). "Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal quotation marks omitted). The court must find by a preponderance of evidence that the Plaintiff meets each of the Rule 23(a) and Rule 23(b)(3) requirements. *Id.* at 320.

With respect to final certification of the collective action under 29 U.S.C. 216(b), a collective action under the FLSA may be maintained when the named plaintiffs are "similarly situated" to the other employees in the action. 29 U.S.C. § 216(b*); Zavala v. Wal Mart Stores*, *Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). At the first stage, the court

considers whether to conditionally certify a collective action; at the second stage, whether to decertify the class. *Zavala*, 691 F.3d at 536.

At the second stage, the court may consider several factors, including (but not limited to): (1) whether the plaintiffs are employed in the same corporate department, division, and location; (2) whether they advance similar claims; (3) whether they seek substantially the same form of relief; (4) whether they have similar salaries and circumstances of employment. *Id.* at 537; *Carr v. Flowers Foods, Inc.,* 2019 WL 2027299, at *4 (E.D. Pa. May 7, 2019). Courts consider whether collective treatment will achieve the primary objectives of a § 216(b) collective action: "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Harrison v. Delguerico's Wrecking & Salvage, Inc.*, 2016 WL 826824, at *6 (E.D. Pa. Mar. 2, 2016) (*citing Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). A district court's decision to grant or deny final certification is not discretionary and must depend only on the court's factual findings as to whether the plaintiffs are in fact "similarly situated." *Zavala*, 691 F.3d at 535; *Verma v. 3001 Castor, Inc.*, 2016 WL 6962522, at *6 (E.D. Pa. Nov. 29, 2016). Once this factual finding is made in the affirmative, "there is no further work to be done;" the statute mandates that the district court grant final certification. *Zavala*, 691 F.3d at 535; *Verma*, 2016 WL 6962522, at *4 (applying same standard).

V.     **DISCUSSION**

Plaintiff requests that the Court certify the following class under Rule 23:

> All direct care workers in Pennsylvania who provided services to
> participants in the Medicaid Home and Community-Based Services waiver
> program and were paid through Public Partnerships, LLC, who worked
> more than 40 hours in a work week at any time from May 11, 2014,
> through date of trial without receiving an overtime premium for all hours
> over 40.

ECF 219, p. 18. Specifically, Plaintiff argues that he and the proposed class members "all

claim that PPL is their joint employer, and that PPL, following its stated policies

consistently as to all class members, refused to pay all overtime premiums due when

plaintiffs worked over 40 hours in a workweek." ECF 219, p. 1.

### A.   RULE 23(a) REQUIREMENTS

#### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." Plaintiffs bear the burden of showing "that there are in fact sufficiently

numerous parties." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013).

Plaintiffs may rely on either direct or circumstantial evidence to do so and need not

pinpoint an exact number of class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d

583, 596 (3d Cir. 2012). While there is no minimum number of plaintiffs required, if the

"potential number of plaintiffs exceeds 40," the requirement is typically satisfied. *Marcus*,

687 F.3d at 595.

In the instant matter, PPL does not contest numerosity. Further, as PPL estimated

approximately 38,000 DCWs provided care in Pennsylvania from January of 2015 to

March of 2018, the numerosity requirement is easily satisfied.

## 2. Typicality

The typicality requirement of Rule 23(a)(3) ensures that the named plaintiff's claims and those of the class are sufficiently interrelated that their interests will be aligned. *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). The requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). When the named plaintiffs challenge the same unlawful conduct that affects the putative class, the requirement is usually met "irrespective of the varying fact patterns underlying the individual claims." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

In this matter, Talarico argues that his incentives align with other class members and are typical of the class because they stem from the same alleged policy and are based on the same legal theory: that PPL uniformly failed to pay DCWs the proper overtime premium under the PMWA. In response, PPL argues that Plaintiff is dissimilar to 86% of the class, and therefore he cannot meet the typicality requirement. ECF No. 228, p. 20. In support of this argument, PPL states that of the 4,969 opt-in class members, a total of 4,246 worked for only one PE, unlike Talarico. ECF 228, Ex. E, Mason Decl., ¶ 40. Accordingly, only 719 DCWs are similar to Plaintiff in that they worked for 2 or more PEs and PPL alleges that this distinction is important as the overtime claims are materially different between these two groups and "depend entirely upon how many PEs for whom a DCW worked." ECF 228, p. 20.

I find this argument of PPL to be unavailing for several reasons. First, the fact that Talarico worked for multiple PE's at once, as only 14% of the DCWs did, is irrelevant.

All DCWs have the same incentive in this matter to establish that PPL is a joint employer, as they would all then be entitled to overtime if they worked more than forty hours in a week. There is no conflict between Talarico's legal theory and the legal theories of the putative class that would defeat typicality, as they would all benefit from establishing PPL's is joint employer, no matter how many DCWs each plaintiff worked for. Talarico's claims, as well as the claims of all class members, will be based on the same set of facts, as the facts relevant to determine whether PPL was a joint employer are the same for all DCWs.

      PPL also argues that DCWs who worked for only one PE, but were not live ins were paid overtime, and thus Talarico is dissimilar from them. ECF 228, pp. 21-22, 23-24. However, it is undisputed that overtime payments to these DCWs did not begin until 2016 and the class in this case goes back to 2014. It is possible that individuals who worked for only one PE and were not a live in were denied overtime the same as Talarico in 2014 and 2015. Therefore, this argument does not defeat typicality.

      PPL also argues that Talarico is not typical of class members who have been paid some, but not all, overtime due. The fact that some DCWs may have received overtime based on their work for a single PE is irrelevant. The issue addressed in the typicality analysis is whether Talarico's legal theories "potentially conflict with those of the absentees." *See Amchem Prods*., 83 F.3d at 631. In this matter, there is clearly no such conflict as Talarico and the proposed class members are challenging the same allegedly unlawful conduct – PPL's refusal to recognize itself as a joint employer and therefore, pay the DCWs overtime. The Third Circuit has stated that typicality "does not mandate that all putative class members share identical claims, because even relatively

pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184 (3d Cir. 2001) (internal quotations and citations omitted); se*e also Espinal v. Bob's Discount Furniture, LLC*, 2020 WL 6055123, at * 6 (D.N.J. Oct. 14, 2020) (finding that although there may have been some variation in the amount of overtime Plaintiff and each class member worked, Plaintiff's claims were not "markedly different" from other class members, as the "legal theory of all claims [was] the same").

Although there may be some variation between Plaintiff and the class members as to how many PEs they worked for, whether they were a live-in and whether they were paid some overtime, I find that Talarico's claims are not "markedly different" from the other class members. As Plaintiff is claiming that he and the other class members were not paid overtime by PPL, their joint employer, for hours worked over 40 per week, I find that the typicality requirement has been met. Clearly, the claims of all putative class members have a "strong similarity of legal theories" or "arise[] from the same practice or course of conduct."

### 3.  Adequacy of Representation

"The final Rule 23(a) requirement, adequacy of representation, has two prongs: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests antagonistic to those of the class." *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2015 WL 4522855, at *9 (E.D. Pa. July 27, 2015) (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). This inquiry assesses "whether conflicts of interest exist between named

parties and those they represent." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Adequacy of the class representative focuses primarily on "whether the class representatives have conflicts of interest with the putative class members; it does not require that the representatives possess more than 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *Williams v. Sweet Home Healthcare, LLC,* 325 F.R.D. 113, 122 (E.D. Pa. Jan. 31, 2018) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)); *see also Amchem Prods*., 521 U.S. at 626. Moreover, only a "fundamental" conflict of interest will be sufficient to impact the adequacy analysis. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* (internal quotation marks omitted).

Current class counsel are well-known and able members of the bar who specialize in these types of cases. As class representative, Talarico is claiming on behalf of the class members that he was not compensated for overtime worked for hours over 40 per week and is seeking the same remedies as the putative class, unpaid wages. As discussed above regarding typicality, Talarico is an adequate representative of the class members, as there is no fundamental conflict of interest between he and the other members. None of the class members have benefitted from PPL not considering itself a joint employer. Therefore, the Court finds that this factor has been satisfied.

## B.  RULE 23(b)(3) REQUIREMENTS

### 1.  Commonality and Predominance

Rule 23(b)(3) requires the Court to find that "questions of law or fact common to

class members predominate over any questions affecting only individual members." The purpose of the requirement is to determine whether the proposed class is "sufficiently cohesive" to warrant class treatment. *Amchem Prods.*, 521 U.S. at 623.

The predominance inquiry is similar to, but more stringent than, the commonality inquiry under Rule 23(a)(2). *See In Re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 311 (3d Cir. 2008). Because of this, it is appropriate to treat the commonality inquiry as subsumed into the predominance inquiry in Rule 23(b)(3) class actions. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015).

The predominance inquiry considers whether the common issues in a putative class action "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages...." *Id.* (internal quotation marks omitted). In analyzing the predominance factor, courts must determine not only whether there are common questions of law or fact, but whether those questions are capable of class-wide answers through common evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Ferreras v. American Airlines, Inc*., 946 F. 3d 178 (3d Cir. 2019) (emphasis added.). "Dissimilarities with the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350.

"To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by the putative

14

class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.' " *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018). This analysis requires the Court to "examine the essential elements of [the] claims on behalf of the ... [c]lass, as well as the evidence they propose to use." *Id.*

Talarico claims that to succeed on the merits of their claims, he and the proposed class members must establish that 1) PPL is a joint employer under the FLSA and the PMWA; 2) DCWs are nonexempt employees who sometimes worked over forty hours per week, and 3) PPL uniformly failed to pay DCWs all overtime due to them. ECF 219, p. 26. Plaintiff argues that the joint employment issue is the central dispute in this matter, and it can be resolved with common evidence, thereby establishing predominance.

To determine whether a defendant is a joint employer under the FLSA and the PMWA, courts apply the *Enterprise* test.[1] The *Enterprise* test examines: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment; compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance or taxes. *Enterprise*, 683 F.3d at 468-69.

PPL argues that "[i]n a joint employment case such as this, whether a given employee is considered an employee of PPL depends in large part on the employee's

---

[1] The analysis with respect to the FLSA also applies to whether is an individual is an alleged employer's employee under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law. *See Talarico v. Public Partnerships, LLC*, 2020 WL 7137072, at *2, n. 1 (3d Cir. Dec. 7, 2020) (*citing Commonwealth, Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870 (Pa. Commw. Ct. 2003), *aff'd* 859 A.2d 1253 (2004)).

individual circumstances, not solely the alleged joint employer's intent." ECF 228, p. 26.

PPL asserts that this case has no common evidence and that it is "virtually impossible"

for Talarico to prove each DCW is an employee of PPL through representative evidence

given the alleged disparities among the DCWs. PPL claims that the alleged disparities

among the DCWs include the fact that each of the PEs could establish their own work

rules for the DCWs and manage their day-to-day services, as well as the fact that the

DCWs allegedly all had different duties. *Id.*

      A review of the instant matter shows that the evidence to be considered for

purposes of the *Enterprise* test is common to all class members.[2] Predominance does not

require finding that Talarico will prevail, only that the question of joint employment can

be answered for the class with common evidence, regardless of what the answer is. *See*

*Vista Healthplan, Inc. v. Cephalon, Inc*., 2020 WL 1922902, at *10 (E.D. Pa. Apr. 21,

2020) ("Rule 23(b)(3) requires a showing that questions common to the class

predominate, not that those questions will be answered, on the merits, in favor of the

class.") (*quoting Amgen*, 568 U.S. at 459 (2013)).

      Specifically, the facts in this matter have shown that PPL uses a standard

application for all DCWs, sets work rules and conditions of employment through that

DCW agreement, reviews all timesheets after approved by a PE and determines whether

or not to pay them, sets maximum pay rates for DCWs and deducts costs for workers

compensation insurance, unemployment insurance and payroll taxes and maintains

employee timesheets, as well as other employment records such as tax filings and payroll

---

[2] It should be noted that the issue of joint employment was briefed on both summary judgment and appeal based upon common evidence. It is somewhat disingenuous for PPL to have argued that it was entitled to an entry of summary judgment based upon common evidence, but now claim that same common evidence is insufficient for purposes of certification.

checks. All these materials, policies and practices apply uniformly to all proposed class members and are common evidence of the claim that PPL is a joint employer. PPL has presented no evidence that it does not treat all DCWs uniformly, whether they work for one DCW or many DCWs.  Considering this evidence regarding PPL's uniform treatment of DCWs, I find that common evidence can be used to make a finding as to joint employment.

PPL has cited no authority in support of its proposition that the joint employment issue turns on the individual circumstances of the DCWs. Further, the *Enterprise* test for joint employment examines whether PPL has the ability to hire or fire DCWs, set work rules, make assignments and set conditions of employment such as compensation, benefits or work schedules, has any involvement in day-to-day supervision of DCWs and whether it controls employee records. PPL has presented no evidence of any individual differences in the role that it plays with respect to any of these aspects of the employment relationship as to different DCWs. In addition, the *Enterprise* test turns not on the substance of the DCWs work rules, but on who has the authority to establish said work rules. As the Third Circuit in this matter previously found that PPL promulgates work rules and sets conditions of employment, *Talarico v. PPL*, 837 F. App'x 81, 85 (3d Cir. 2020), clearly this issue is common to the class and can be proven or disproven with common evidence.

As to PPL's argument that the DCWs all have different work duties, it cites to several cases that it claims support its argument that courts will not certify a class where claims for overtime depend on employees' actual duties, which differed among them. However, all the cases cited by PPL in support of this proposition are distinguishable.

First, *Vinole v. Countrywide Home Loans*, 246 F.R.D. 637, 651 (S.D. Cal. 2007), *aff'd* 571 F.3d 935, 946-57 (9th Cir. 2009), dealt with an outside sales exemption and turned on whether the employee was engaged in sales, thereby necessitating an analysis of those employees' duties. No such exemption or analysis of duties is at issue in this matter. PPL also cites *Jiminez v. Domino's Pizza*, 238 F.R.D. 241, 253 (C.D. Cal. 2006), which involved a management exemption and turned on whether an employee performs management duties, which is also not at issue in this case. Lastly, PPL cites *Luviano v. Multi Cable, Inc.*, 2017 WL 3017195, *20 (C.D. Cal, 2017), for the proposition that courts are hesitant to "certify wage and hour classes where key facts could not be discerned through routine business records, such as where claims to overtime compensation depend on employees' actual duties which differed among employees within the class." Although it is true that the *Luviano* court expressed some hesitancy, the court did grant certification in that joint employment case because "central aspects of the joint employer theory can be determined on a common basis." *Id.* at * 20. PPL is correct that in cases where claims to overtime depend on employees' differing duties, courts are hesitant to certify a class, but that is not the instant situation. Rather, the claims to overtime here depend only on the existence of a joint employment relationship and exceeding a forty (40) hour work week. PPL has set forth no case that supports its claim that PPL's denial of overtime for domestic services in the home of the employer depends upon a DCW's individual work duties.

Further, even if it could be said that the overtime claims here depend on the DCWs duties, PPL's claimed differences between DCWs - different hours worked at different locations with different supervisors - do not lead to fundamentally different

duties of the DCWs. It is undisputed that DCWs duties involve assisting their PEs with activities of daily living such as personal hygiene, dressing, food preparation and light housekeeping. ECF No. 329, Ex. 18. Those duties are universal among all DCWs and any minor differences in duties is insufficient to defeat certification.

Whether DCWs worked more than 40 hours per week without proper overtime compensation can be determined from generalized proof consisting of PPL's own payroll records. *See, e.g., Carr*, 2019 WL 2027299, at *15 (finding inquiry into whether Plaintiffs worked more than 40 hours a week without adequate compensation "is susceptible to class-wide proof"); *Williams*, 325 F.R.D. at 129 (stating that plaintiffs may rely on defendants' payroll records to establish common evidence of unlawful pay practices); *see also Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 183 (W.D.N.Y. 2005).

Further, the need to calculate damages will not defeat predominance. PPL's payroll records easily allow identification of the number of hours a DCW worked each week and whether that DCW was paid overtime for hours over 40. This common evidence will permit a class-wide determination of damages and supports predominance. *See Troncone v. Velagos*, 2013 WL 1222630, at * 6 (D.N.J. Mar. 25, 2013) (predominance existed among the proposed class despite variations in hours worked and rate of pay). Accordingly, the Court finds that the predominance factor of Rule 23(b)(3) is met.

### 2.  Superiority

"In establishing superiority, a plaintiff must demonstrate that resolution by class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated without sacrificing procedural fairness or

bringing about other undesirable results." *King Drug Co.*, 2015 WL 4522855, at *17 (*citing Amchem*, 521 U.S. at 625) (internal quotations omitted). Courts must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential*, 148 F.3d at 307-08 (citations and internal quotations omitted). Rule 23(b)(3) lists four factors to consider: (A) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (B) "any similar pending litigation"; (C) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (D) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Talarico argues that the superiority requirement is met because there is no significant interest by any class members in controlling the prosecution of their individual claims, as there is only one related case currently pending, *Knight v. PPL*, No. 19-cv-02461 (E.D. Pa.). Plaintiff also argues that many direct care workers with smaller claims would have little incentive to bring individual actions, *see Amchem*, 521 U.S. at 617; *Williams*, 325 F.R.D. at 130, that there is no issue with holding trial in this District as opposed to any other forum, and that there will be no difficulties in managing the trial, as the claims of Plaintiff and the putative class can be tried on a representative basis, with the same core of common evidence establishing both liability and damages for each member of the class.

In response, PPL focuses its opposition to superiority on the issue of manageability, arguing that it has individual defenses that will make a class action trial unmanageable, as well as arguing that the joint employer question and damages issues will all raise individual questions that cannot be decided based on common evidence. I

find PPL's argument to be unpersuasive. As discussed above, the joint employment question and damages can be decided based on common evidence. The only question that remains is whether this action would be unmanageable due to PPL's alleged individual defenses.

Specifically, PPL alleges that it has affirmative defenses to the *Enterprise* test for joint employment with respect to the DCWs who are exempt from overtime under the live-in exemption and based on the defense that no DCW is owed overtime prior to January 1, 2016. ECF 228, pp. 28-29. PPL claims that an inquiry must be made as to every DCW regarding how many PEs they worked for, whether they lived with their PE and whether they worked for multiple PEs and whether they received overtime pay. According to PPL, without said individualized inquiry, it will be precluded from raising critical defenses such as the existence of DCWs who worked for one PE and were paid all authorized overtime after January 2016. *Id*. at p. 29.

However, this Rule 23 certification motion is being decided as to the Pennsylvania Minimum Wage Action claims. In the context of Pennsylvania law, PPL's alleged specific defenses do not apply, as the MWA does not have a live-in exemption and has not permitted joint employers to exempt domestic employees from overtime since at least 2010. *Bayada Nurses, Inc. v. Commonwealth, Dep't of Lab. & Indus.*, 8 A.3d 866, 883-84 (2010) (holding that where home care agency was joint employer with the household receiving services, there was no exemption, and the joint employer was required to pay overtime). Further, the class definition excludes those DCWs who were paid all overtime due, so this claimed individual defense by PPL also must fail, as no such DCWs will be a part of the class. Accordingly, any defenses held by PPL can be

resolved by common evidence, and they will suffer no prejudice if required to do so. Therefore, the superiority factor of Rule 23(b)(3) has been met, and this state law case shall be certified.

### C.  FINAL CERTIFICATION UNDER 29 U.S.C. § 216(B)

Under the collective action provision of the FLSA, an employee alleging an FLSA violation can bring a suit on "behalf of himself ... and other employees similarly situated." 29 U.S.C. § 216(b). To be included in a collective action, the plaintiffs must be "similarly situated" and give written consent to participate. *Id.* Courts in the Third Circuit apply a two-step certification process to FLSA collective actions. *Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 224 (3d Cir. 2016). The first step, conditional certification, normally requires only a "modest factual showing" that there is a "factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected the proposed collective action members." *Id.* On September 4, 2018, I found that Talarico had made such a showing and granted conditional certification.

The second step, final certification, is where the court "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J. 2014) (internal quotation marks omitted). In considering whether the proposed collective plaintiffs are similarly situated, our Court of Appeals takes an "ad-hoc" approach "which considers all the relevant factors and makes a factual determination on a case-by-case basis." *Zavala v. Wal Mart Stores*, 691 F. 3d 527, 536 (3d Cir. 2012). "Relevant factors include (but are not limited to): whether the plaintiffs

are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Id*. at 536-537. "This list is not exhaustive, and many [other] relevant factors have been identified[,]" including the extent to which members of the proposed class will rely upon common evidence and fairness and procedural considerations. *Id*. The burden is on the Plaintiff to "demonstrate by a preponderance of the evidence that members of a proposed collective action are similarly situated" for purposes of final certification. *Id*.

"Being similarly situated does not mean simply sharing a common status, ... [r]ather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id*. at 538. General allegations of an overarching employer policy "are insufficient, and plaintiffs are required to produce substantial evidence of a single decision, policy, or plan." *Andrako v. United States Steel Corp.*, 788 F.Supp.2d 372, 378 (W.D.Pa.2011).

**1. Same Department and Location**

In determining whether plaintiffs are similarly situated, courts consider, *inter alia*, "whether plaintiffs are employed in the same corporate department, division, and location." *Zavala*, 691 F.3d at 536-37. Talarico argues that he and all putative class members share the same job title (DCW) and the same responsibilities, which are set forth in the DCW Agreement which all DCWs must sign before their employment begins, thereby satisfying this factor. In response, PPL argues that the DCWs "separately work in

homes located all over the Commonwealth, they work for different PEs (and differing numbers of PEs), and work in different settings." ECF 228, p. 36.

However, the putative plaintiffs all performed substantially the same duties as discussed above, are employed under the same program and are all located in Pennsylvania. Any minor differences in their job duties or locations are immaterial, as the similarities between the DCWs clearly outweigh the minor differences in location and setting. *See Ruffin v. Avid Budget Car Rental, LLC*, 2014 WL 294675, at *1 (D.N.J. Jan. 27, 2014) (finding that a nationwide class of shift managers were similarly situated when they alleged that defendant had misclassified them and failed to pay them overtime compensation). Accordingly, this factor weighs in favor of the plaintiffs being similarly situated.

### 2. Similar Claims

Next, courts consider whether plaintiffs "advance similar claims." *Zavala*, 691 F.3d at 537. The Third Circuit has held that the existence of a common policy may relieve concerns about plaintiffs' otherwise varied circumstances. *See, e.g., Karlo v. Pittsburgh Glass Works, LLC,* 849 F.3d 61, 85 (3d Cir. 2017) ("Being similarly situated means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."). As discussed above, Talarico presented evidence that PPL is a joint employer to all opt-in plaintiffs and applied the same compensation policy to all opt-in plaintiffs. Clearly, Plaintiff and the class members all advance similar claims.

The Third Circuit additionally weighs whether plaintiffs "seek substantially the same form of relief." *Zavala*, 691 F.3d at 537, which plaintiffs in this matter clearly do.

All opt-ins seek monetary relief under the FLSA for overtime that they worked in excess of forty hours per work week that was denied by PPL, as well as liquidated damages. Although the amount of relief due to each plaintiff may differ, the form of relief sought is the same. Accordingly, this factor weighs in favor of a finding that plaintiffs are similarly situated.

### 3.   Similar Wage Rates and Circumstances of Employment

Finally, the Third Circuit weighs whether plaintiffs "have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 537. The evidence in this matter shows that PPL had a standardized payroll system and policies for DCW pay, and that the DCWs have similar job duties and responsibilities as set by PPL. Therefore, this factor also weighs in favor of the plaintiffs being similarly situated.

### 4.   Individualized Defenses

Lastly, courts examine whether defendant's potential defenses require proof of individualized facts. *See Carr,* 2019 WL 2027299, at *6. Although this inquiry may be fact-intensive, it "does not preclude a collective action where plaintiffs share common job traits." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263 (11th Cir. 2008). As discussed above, the Court has determined that common issues and facts predominate in this matter, and therefore, PPL's alleged individual defenses are insufficient to prevent the plaintiffs from proceeding as a collective action. In fact, PPL is only defending a finite number of factual situations regarding the DCWs in question (i.e., a DCW who lives in the PE's home, a DCW who does not live in the PE's home, and a DCW who works for more than one PE.)

In conclusion, discovery in this matter has produced sufficient evidence to show that Talarico and the opt-in plaintiffs are similarly situated and this matter should proceed to trial as a collective action. Accordingly, Plaintiff's motion for final collective action certification is granted.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Class Certification and Final Collective Action Certification is granted.